[Decided February 1, 1888.]

## HUGH BARKLEY *v.* UNITED STATES.

SCHOOL LANDS—ORGANIC ACT—TRESPASS—UNLAWFUL FENCING.—By the organic act of Washington Territory reserving sections 16 and 36 of each township for the common schools of the territory, such sections are not severed from the public domain nor are their character as public lands thereby destroyed; but the United States may maintain an action under the act of congress approved February 25, 1885 (23 U. S. Stats. 321), prohibiting the inclosure of public lands of the United States, without claim or color of title, against any one inclosing such sections.

ERROR to the District Court holding terms at Walla Walla. First District.

This action was brought under the provisions of the act of congress entitled "An act to prevent unlawful occupation of public lands," approved February 25, 1885. The case was argued upon demurrer to the complaint, which was overruled by the lower court. The following facts were also stipulated by the parties, and found by the court, to wit:

1. That the lands described in plaintiff's complaint, to wit: section 36, in township number 9 north, of range 44 east, is prairie land, devoid of timber, and suited for agricultural purposes only.

2. That at the time of the passage of section 1947 of the Revised Statutes of the United States, to wit: March 2, 1853, said lands were a part of the public domain of the United States, and that the same were subsequently surveyed by the United States, and the public surveys extended thereover;

that they were not at the time of or prior to said survey or extension settled upon or occupied by any settler or settlers.

3. That said lands were embraced in and constituted a part of the lands described in said section 1947, reserved for the purpose of being applied to common schools in the Territory of Washington.

4. That on or about the first day of November, 1884, after said survey and extension, the defendant entered upon said section, and before the commencement of this action had plowed about one hundred acres thereof, and had fenced the same in and was occupying and cultivating it at the time of the commencement of this action; and that he had inclosed all of said section with a post and rail fence of the height of about five feet, extending on the outer lines of said entire section of land around said section so as to inclose the same in one inclosure; and that at the time of the commencement of this action the defendant was maintaining and continuing said fence, and was controlling the inclosure made by the fencing of said section as aforesaid, and was asserting a right to the exclusive use and occupancy of said section of land.

And the court found, as a conclusion of law, that said section 36, in township 9 north, of range 44 east, was at the time of the commencement of the action, and at all times before and since, public lands of the United States.

And the court thereupon rendered judgment, directing the destruction and removal of defendant's fence on said section in five days, and for costs. The defendant appealed.

*Messrs. B. L. & J. L. Sharpstein, Mr. M. M. Godman,* and *Mr. S. G. Cosgrove,* for the Plaintiff in Error.

By the reservation in the organic act, sections 16 and 36 were severed from the mass of public lands, and were not embraced in or affected by the act of February 25, 1885, under which this action was prosecuted and the judgment rendered. (*Board of Trustees Vincennes University* v. *Indiana,* 14 How. 268; *Beecher* v. *Wetherby,* 95 U. S. 517; *Minnesota* v. *Bachelder,* 1 Wall. 109; *Kissell* v. *Board of Direct-*

*ors St. Louis Schools,* 18 How. 19; *Cooper* v. *Roberts,* 18 How. 173; *Kansas Pacific R. R. Co* v. *A., T. & S. F. R. R. Co.,* 13 Fed. Rep. 106; *Turner* v. *Am. Baptist Miss. Union,* 5 McLean, 344; *U. S.* v. *Payne,* 8 Fed. Rep. 883.) The school lands in this territory have been reserved and appropriated for a particular purpose by the act of 1853, and are not a part of the public domain of the United States; the judgment rendered in this case is authorized by the act of 1885 only as to lands embraced in the act. The United States Supreme Court, in *Leavenworth, Lawrence & Galveston Railroad Company* v. *The United States,* 92 U. S. 733, say that a tract of land lawfully appropriated to any purpose becomes thereafter severed from the mass of public lands, and that no subsequent law or proclamation will be construed to embrace it or operate upon it, although no exception be made of it.

*Mr. W. H. White, U. S. Attorney,* for the Defendant in Error.

The reservation of said section for school purposes was no compact, nor was it a grant or in the nature of a grant. It is true the lands were reserved for a specific purpose; but no title has passed, and the absolute control of the lands reserved, so far as it may be necessary to protect them from occupation or use by any person who had not a settlement claim thereto at the time of survey, lies in the United States. The legal title to these lands being in the United States, it has the power to protect them from waste or trespass, by due process of law, the same as any private person owning title might do. (*Cotton* v. *United States,* 11 How. 229; *U. S.* v. *Bank of the Metropolis,* 15 Peters, 377; *U. S.* v. *Grear,* 3 How. 120; *U. S.* v. *Duluth,* 1 Dillon, 471.) So that, independently of the act of February 25, 1885, this action could be maintained, and the judgment herein sustained. Appellant contends that the lands were severed from the mass of public lands by the act of 1853 (sec. 1947, Rev. Stats. U. S.), and were not embraced in or affected by the act of 1885. (23 U. S. Stats. 321.) The first sec-

tion of the act of 1885 declares unlawful all inclosures of public lands to which the party had no claim or color of title, made or acquired in good faith, with a view to entry thereof at the proper land office, under the general laws of the United States, at the time any such inclosure was or shall be made. (23 U. S. Stats. 321.)

The term "public land" is equivalent to the term "public domain," and is land over which congress has extended, or may extend, the public surveys. An examination of the various acts of congress relative to surveying the public lands will convince the court of this fact. Land that has been, or may be, so surveyed, is public land within the meaning of the word "public," as used in section 1 of the act of 1885, relative to the unlawful occupancy of public lands. It ceases to be public lands only when the right of private proprietorship has attached. (*Heydenfeldt* v. *Dany G. & S. M. Co.*, 10 Nev. 291; 1 Lester's Land Laws and Regulations, pp. 82, 730, et seq.) It is only where the reservation is in the nature of a compact or grant, and congress could not rightfully bestow them without disturbing existing relations and producing vexatious conflicts, that the lands so reserved are severed from the mass of public lands, and are not subject to general laws. (*Leavenworth etc. R. R. Co.* v. *U. S.*, 92 U. S. 733; *Newhall* v. *Sanger*, id. 761.)

Mr. Justice ALLYN delivered the opinion of the court.

The question in this case involves the status of sections 16 and 36, reserved for school purposes throughout Washington Territory, The United States, by its attorney, filed its complaint at Pomeroy, claiming: First, that "section 36, township 9 north, of range 44 east of the W. M., is and was public lands of the United States;" second, that on the 1st day of November, 1884, Hugh Barkley "without right or color of title, and without an asserted right thereto, by or under a claim made in good faith, went upon said tract of land and inclosed same," etc., and so continues; prays removal of the inclosure, for an injunction, and other relief. To this the defendant (appellant) files a general demurrer,

which was overruled, and decree given as prayed.  Defendant appeals.

The admissions by the demurrer that this section is public lands of the United States, and the defendant without right or color of title went thereon, would seem to dispose of this case, but both parties apparently agree in submitting for determination the question whether the identification of sections 16 and 36 of the public lands by survey, and their reservation for school purposes by act of congress, so operated as a conveyance or grant of the interest of the government in said lands as to take them out of the domain of public lands of the United States, so that the government could have no right of control or supervision over them, as claimed and asserted herein.  It is made unlawful to inclose any public lands of the United States without claim or color of title, in good faith, as by entry, etc.  (Section 1, act of February 25, 1885, 23 Stats. 321.)  It is contested that these lands were severed from the public domain by the act of 1853, and therefore section 1, just referred to, does not apply to these.  The mere survey of these lands would not cause them to lose their character of public lands; such change could occur only when they have lost their public character, by reason of a *bona fide* right of private entry or ownership under the laws of the United States.  Now, because of the mere reservation or appropriation by the United States of these sections, for the purpose of being applied to the common schools of the future, do they lose their character of public lands?  It is true that they are not "public lands" in that they are open to entry, etc., but that fact alone does not prevent them being in a certain sense public lands.  The government has, for a wise purpose, set apart and reserved these lands from the general domain, and announced the purpose to which they will be devoted; it retains control and dominion over these until the happening of a certain event; it is somewhat as a trustee of an express trust.  It also retains the right, up to a certain time, to annul the act by which such sections were severed, and might, within that limit, annul the former

act, and throw these lands open as "public lands." This reserved right in the government must give it control over these lands as absolute as that of any owner could be. As is well said, ever since the organization of the territory these school sections have been recognized as "public lands," and the courts have sustained all the rights of the government, whenever their aid has been invoked, in preventing trespass upon them. Any other doctrine would lead to a practical annulment of the act of congress, and render nugatory the effort to provide for and establish a common school system. Any one entering upon these lands becomes a trespasser; he cannot have or acquire any rights. The power of the United States to prevent such wrong must be conceded, or the wrong would go unpunished.

The judgment of the court below was entirely right and is affirmed.

JONES, C. J., and TURNER, J., concurred.