[No. 3855.   Decided December 3, 1901.]

DAVID LONGMIRE, *Appellant,* v. RICHARD SMITH *et ux.,*

*Respondents.*

WATER COURSES — PRIOR APPROPRIATION — VESTED RIGHTS — TO WHAT AREA APPLICABLE.

The prior appropriator of water upon public lands for the purposes of irrigation has a right thereto superior to all other claims, whether founded upon appropriation or riparian ownership, and under the statute of Washington Territory (Laws 1873, p. 520) recognizing such right and regulating the use of water in Yakima county, which provides that any person having title or possessing right to any agricultural lands in such county "shall be entitled to the use and enjoyment of the waters of the streams or creeks in said county for the purpose of making said land available for agricultural purposes to the full extent of the soil thereof," such prior appropriator of waters in Yakima county holding a possessory right to a definite tract of agricultural land is entitled to water for the irrigation of the whole thereof as of the date of his original appropriation, when his use of the water for irrigation has been continuous and his extension of the area of cultivation has been made with reasonable diligence.

SAME — MEASUREMENT OF WATER REQUIRED — INSUFFICIENCY OF PROOF — REMANDING FOR FURTHER PROOF.

The fact that there is no clear and satisfactory proof, in an action for injunction against subsequent appropriators, showing the amount of water required by the prior appropriator thereof for irrigating arid lands for agricultural crops, would not deprive such appropriator of his full right to the waters to which he is entitled under his appropriation, but the matter can be properly remanded to the lower court in such a case for the purpose of adducing evidence upon which to base a decree for the quantity of water required.

Appeal from Superior Court, Yakima County.—Hon. JOHN B. DAVIDSON, Judge. Reversed.

*Whitson & Parker* and *H. J. Snively,* for appellant.

*Graves & Englehart, Jones & Guthrie, Bogle & Rigg* and *Snyder & Preble,* for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—In its principal aspects, this is a suit brought by the plaintiff to quiet the title to water appropriated by him for the irrigation of farm lands situated on the Wenas river, in Yakima county. With few exceptions, the defendants are riparian owners situated upon the river above the lands of plaintiff. The Wenas river, upon which nearly all the lands border, has its source in the Cascade mountains, and flows through the Wenas valley, which is from one to two and one-half miles wide, and about twenty miles long. The side lines of the valley from the source of the stream to its mouth are defined by ranges of hills of an altitude of several hundred feet. The valley slopes from each side of the stream, flowing through its center, and the water has considerable grade the entire way. The volume of water flowing in the stream varies from an ample supply in the spring and until about the middle of July of ordinary years, when it begins to sub-

side, and is inadequate to supply sufficient quantity to irrigate all the farm lands of the valley. The complaint alleges plaintiff's ownership of 480 acres of riparian lands in a body, and appropriations of water for irrigation of such lands by himself and his predecessors in interest. Of the three several parcels comprising the entire premises, he deraigns his rights as follows: First, the W. ½ of the N. W. ¼ of section 32, the N. E. ¼ of the N. E. ¼ of section 31, and the S. E. ¼ of the S. E. ¼ of section 30, all in township 15 N., range 18 E., W. M., from Augustin Cleman, who settled upon said premises in the spring of 1865, and which parcel will be mentioned hereinafter as the "Cleman Tract"; second, the W. ½ of the S. E. ¼, the N. E. ¼ of the S. E. ¼, and the S. W. ¼ of the N. E. ¼ of section 30, township 15 N., range 18 E., W. M., from Lorenzo Perkins, who settled on said premises in 1871, and which is hereinafter designated as the "Perkins Tract"; third, the S. E. ¼ of the N. E. ¼ of section 30, the W. ½ of the S. W. ¼ and the S. W. ¼ of the N. W. ¼ of section 29, township 15 N., range 18 E., W. M., from Anson White, who settled thereon about the spring of 1873, and which is hereinafter designated as the "White Tract." The complaint alleges that plaintiff and his predecessors in interest about the dates alleged intended to appropriate sufficient water from the Wenas river to irrigate the several tracts described, and that thereafter, with due diligence, sufficient appropriations were made and used to irrigate such tracts, and that the use has been continuous from the respective dates of the appropriation until the commencement of this suit. He prays that his right to such appropriations be decreed, and that the defendants be enjoined from the disturbance or interruption of his full enjoyment of the

use of the water so acquired by such appropriations. He also demands the rights of a riparian owner. The defendants answered separately, denying the material allegations of the complaint, except the admission that the Wenas river is a natural water course, and the waters, if unobstructed and undiverted at certain seasons of the year flow through the plaintiff's lands. They admit the ownership of their lands above those of plaintiff, and the diversion of water prior to the commencement of the action. Nearly all the answers plead as separate defenses the ownership of lands in the defendants, with title deraigned from the government, and the possession of such lands by each of them in varying periods, from about three to twenty years; the cultivation thereof; riparian ownership upon the stream; the use of water, and the diversion thereof by various ditches, for the irrigation of their lands, and for stock and domestic purposes; and they further plead that they have valuable improvements, and that the use of the water is indispensable to their maintenance. They aver continuous diversion of the water for a period of more than ten years preceding the commencement of the action, under a continuous claim of right, and adverse to the rights of plaintiff. It is also alleged there is no other source for irrigating their lands. The substance of the pleadings is mentioned as above, and includes all the defenses set forth in any of the answers, as well as the claims of right stated in the complaint, that are deemed material to the consideration of the cause here. There is no claim made by the defendants for affirmative relief, or the definition of their rights among themselves. The court made sixty-six findings of fact. There are no exceptions urged by the defendants here to the findings of fact. A number of exceptions

were taken to the findings by the plaintiff. The statement of facts includes over 800 folios of typewritten matter, besides numerous exhibits and affidavits. In some instances counsel for the plaintiff have referred to the pages of the statement of facts. But, in the view now taken of the law applicable to the cause, only an examination of the evidence relating to the appropriations claimed by the plaintiff, and a few of the older appropriations asserted by the defendants, will be mentioned.

1.   Referring to the Cleman tract, the court, in substance, found: That Cleman settled thereon in the spring of 1865, being at the time a citizen of the United States, and qualified to acquire title under the general land laws, and that he went into the possession thereof with the intention of acquiring title, and continued in possession thereafter until the 10th of March, 1871, when he sold and delivered all of his interests, improvements, and possessory rights in the premises to the plaintiff, in consideration of the sum of $400. At the time Cleman had a dwelling thereon, the premises were fenced, and there were other improvements. Eighty acres of the tract were subirrigated by the waters of the Wenas, and he raised grain and hay from such tract by subirrigation. That upon the purchase of the tract, in March, 1871, by plaintiff, he immediately entered into possession, and established his residence thereon. That he was qualified to acquire the tract under the land laws of the United States, and subsequently acquired title thereto. That in April, 1871, for the purpose of irrigating such lands he constructed a ditch from the Wenas river of sufficient capacity to irrigate seventy-five acres of said tract. That in May of the same year he constructed another ditch sufficient to irrigate a large portion of such premises. That

thereafter plaintiff continued to use such ditch and other means for diversion of the water, and to cultivate and raise agricultural crops upon said premises, until the commencement of the present suit. It is also found that all the lands on the stream above this tract were at the time of plaintiff's appropriation public lands of the United States, and that no waters had been appropriated, or in any manner used for irrigation or any other lawful purpose, out of the said stream. This finding is sufficient to support plaintiff's claim of prior appropriation of water from the Wenas river for this tract. Referring to the Perkins tract, the finding was that Perkins in 1871 settled upon said premises, qualified to acquire them under the land laws of the United States, and. the middle of June is mentioned as the time when Perkins diverted water in a ditch to irrigate the premises; that Perkins continued to reside thereon and to irrigate the same and construct other ditches until June, 1873, when he sold his interest and possessory rights and improvements to Charles Longmire; that Charles Longmire immediately went into the possession of the lands, and continued the use of the water and cultivation of the land until 1878, when, having obtained title by patent thereto in January, 1878, he conveyed the tract to the plaintiff; that plaintiff has since continued the irrigation and increasing cultivation of said premises, until the commencement of this suit. In view of the exception taken to this finding by plaintiff, we have examined the evidence, and conclude that the finding should have been made more definite and certain, and that the appropriation of water to irrigate these premises should date and be the next appropriation from the waters of the Wenas river after that made upon the Cleman tract, and that it is prior to all claims of the

defendants. Referring to the White tract, the finding is
that Anson White, a person qualified to acquire land under
the laws of the United States, settled upon the premises
in the spring of 1873, and there was ten acres of the
premises then irrigated from ditches theretofore taken
out by the plaintiff on the Cleman tract; that White con-
tinued to irrigate and occupy the premises until 1874,
when he transferred all his interest in such tract and im-
provements to the plaintiff; that plaintiff made a home-
stead entry of said premises, and obtained title thereto,
and continued to irrigate and enlarge the improvements
thereon; that in 1878 plaintiff had constructed a ditch
which irrigates eighty acres additional to the original
land irrigated by White. The evidence with reference to
the date of this appropriation has been considered, and
it is concluded that the appropriation of the water for the
purpose of irrigating the White tract was made subse-
quent to the appropriation of water made upon the prem-
ises now owned by the defendant T. D. Quinn, described
as follows: The W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ (being lots 1 and
2) and the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ and the N. E. $\frac{1}{4}$ of the
S. W. $\frac{1}{4}$ of section 19, township 15 N., range 18 E.,
Willamette Meridian,—but that the appropriation of
water for the purpose of irrigating the White tract is su-
perior to all the other defendants, except the said defend-
ant T. D. Quinn, and that the claim of right of said T. D.
Quinn deraigned from the settlement and appropriation
of John Perkins in the fall of 1870, as mentioned in the
findings, is superior in time to the claim of appropria-
tion established for the White tract. The evidence has
also been examined in connection with the findings refer-
ring to the premises of the defendant Lloyd Purdin, and
it is concluded that the claim of appropriation thereon is

inferior to the claim of plaintiff for the Cleman, Perkins, and White tracts. It is deemed unnecessary to further inquire into the claims stated by any of the other defendants.

2. The superior court did not find the quantity of water flowing in the Wenas river at any time. It decreed that after the 20th day of June in each year the plaintiff was entitled to have the exclusive use of the waters of the stream for the succeeding three and one-half days; that the defendants should then have the use of the water for the three and one-half days succeeding; that thereafter plaintiff should have the exclusive use of the water for the four succeeding days; that the defendants should then have the use of the water for the three succeeding days, and plaintiff should have the exclusive use of the water for five days then succeeding; and the defendants should have the exclusive use of the water the succeeding two days; and thus to alternate in the use of said water between plaintiff and defendants from said time during the dry season of each year; and that the riparian owners mentioned in the findings of fact were entitled to use the waters of the stream at all times for stock and domestic purposes; that each of the parties to the suit should pay his own costs; and that plaintiff was not entitled to damages. Plaintiff excepts to the decree.

3. If the claim of prior appropriations and beneficial use of sufficient water from the Wenas river for the purpose of irrigating the respective parcels of land owned by him be established, then the plaintiff's right to the use of the water is superior to all other claims, whether founded upon appropriation or riparian ownership. The lands in the Wenas valley are generally arid, and require artificial irrigation to successfully produce ordinary agricultural

crops.  The right to appropriate water from the water courses on the public domain was founded upon the necessity and customs of settlers in the arid regions, and was authorized by the federal government, the owner of both the land and the water.  It is an elementary principle of the law of appropriation of water for irrigation that the first appropriator is entitled to the quantity of water appropriated by him, to the exclusion of subsequent claimants by appropriation or riparian ownership. *Thorpe v. Tenem Ditch Co.,* 1 Wash. 566 (20 Pac. 588); *Geddis v. Parrish,* 1 Wash. 587 (21 Pac. 314); Black, Pomeroy's Water Rights, § 68, and following.  When a valid appropriation is made, the right, according to all the authorities, becomes vested.  There is an express reservation in all grants by the general government in favor of such rights.  The legislature of Washington Territory, in the recognition and regulation of the right to the use of water in Yakima county, by an act approved November 13, 1873 (Session Laws 1873, p. 520), defined the rights of appropriation.  Section 1 provides as follows:

"That any person   .  .  .   who may have or hold a title or possessory right or title to any agricultural lands within the limits of Yakima county, Washington Territory, shall be entitled to the use and enjoyment of the waters of the streams or creeks in said county for the purposes of irrigation and making said land available for agricultural purposes to the full extent of the soil thereof."

Section 4 declares:

"That in all controversies respecting the right to water under the provisions of this act, the same shall be determined by the date of the appropriation as respectively made by the parties."

And section 11 further repeats:

"That in all controversies respecting the right to water in the county of Yakima whether for mining, manufacturing, agriculture or other useful purposes, the rights of the parties shall be determined by the dates of appropriation respectively."

4. Thus it will be seen that the measure of the appropriation, as defined in § 1 of the act of November 13, *supra,* is the making of "said land available for agricultural purposes to the full extent of the soil thereof." At the time the early appropriations were made from the Wenas river there was no procedure prescribed by legislation for notice of the appropriation as now exists, but absence of such prescription did not make actual notice of the intention to appropriate unavailable. Certainly, when the possessory right to a definite tract of agricultural land was acquired by the settler, and made known by his residence and cultivation thereon, and by the use of water from the stream, the intention to appropriate and continue to use the water should be inferred; and the continuous use of the water for irrigation thereafter, and the extension of the area of cultivation with reasonable diligence, must confirm the appropriation from the beginning of the diversion; and the quantity of the water appropriated may also reasonably be inferred from the quantity of the land occupied, with its boundaries thus defined and claimed. It was said of a similar appropriation in *Offield v. Ish,* 21 Wash. 277 (57 Pac. 809):

"He continued from year to year to improve the premises, put out more fruit trees and cultivated more of the land, as is usually done by farmers in improving new land. Appropriation of water consists in the intention, accompanied by reasonable diligence, to use the water for the purpose originally contemplated at the time of its diversion."

It seems fairly deducible from the evidence that the plaintiff, by himself and his predecessors in interest, conforms to these requisites for actual appropriations on the tracts of land hereinbefore described. It is true, more difficulty is involved in the investigation and determination of the time and the amount of the appropriation than where the procedure has been accurately defined by statute. But these appropriators were farmers beginning in an unsettled and new country, and the reduction of their lands to cultivation was in the usual course of such operations under such conditions. There can be no reasonable hesitancy in arriving at the conclusion that they intended to acquire sufficient water to irrigate their lands, and by various means—ditches, the use of sloughs, and natural channels—they utilized the water; and we think the evidence, fairly interpreted, shows the use of reasonable diligence in the continuous increasing use of the water for the purpose of rendering their farms available for agricultural purposes to the full extent of the soil thereof.

As already observed, it has been concluded that the appropriations were in fact made, and the rights to the appropriations became vested. The superior court, however, found that it could not determine from the evidence the quantity of water required for the irrigation of the plaintiff's parcels of land. The evidence upon this issue is not sufficiently clear for this court to set aside this finding. An examination discloses that a number of witnesses, when testifying, and while expressing opinions as to the number of inches of water required to irrigate the land, had not very definite ideas of the measurement of water; and the court was justified in attaching but little weight to such testimony. It is also observed that the terms "inches" and "miners' inches" were used very in-

definitely, and that ditches were frequently mentioned by the width and depth, without the specification of the grade.     All these terms and descriptions, without more specific statement, are of very little aid in the measurement of the definite quantity of water required for the irrigation of the lands mentioned.     For a pertinent discussion of the value of such evidence, see *Dougherty v. Haggin,* 61 Cal. 305.     The term "miners' inch" cannot be definite, without the specification of the head or pressure, and the witnesses continually vary when speaking of the pressure in the "miners' inch."     The law (Bal. Code, § 4090) prescribed, "The unit of measure of water for irrigation, mining, milling, and mechanical purposes in this state shall be a cubic foot of water per second of time."     However, the necessity of the issue presented is a definite measurement of the quantity of water required for the irrigation of these farm lands, and may be expressed in inches where the pressure and method of measurement is given, or in the unit adopted by the statute.     The common experience in irrigating arid lands for agricultural crops in Yakima county would seem to afford a rule for the judicious application of water for the lands herein.     To such quantity of water the plaintiff is entitled by virtue of his prior appropriations.     The fact that he did not describe a definite measurement of what he used, and that there was no clear and satisfactory proof showing the amount required, does not deprive him of his rights.     Evidence doubtless can be adduced showing the application of water in irrigation for such lands as these, where more definite measurements of the quantity used has been determined.     It is deemed advisable to make these suggestions in view of the disposition that must be made of the case.

5. It is concluded that the plaintiff's appropriations for the Cleman tract and the Perkins tract are prior and superior to the rights of all the defendants who have appeared in the action, and that his appropriation for the White place is prior and superior to all the defendants who have appeared, except the defendant Quinn, whose premises have been heretofore described; and it will be necessary to determine the quantity of water in the appropriation of Quinn as between himself and the plaintiff. The conclusion of the superior court relating to the damages claimed and to the costs of the suit in the superior court will not be changed. The plaintiff will recover his costs upon appeal, assessed equally against the defendants, with the exception of the defendant Quinn.

The judgment of the superior court is reversed, and the cause and the record therein remanded to that court, with instructions to hear and consider only such further evidence as may be produced before it upon the quantity of water required to irrigate the three several parcels of land owned by plaintiff, and the water required for the irrigation of the premises, hereinbefore described, of the defendant Quinn, and that such quantity of water so required be found by the court, and thereafter that the court enter judgment determining the priorities of the appropriations of plaintiff as hereinbefore found by this court, and adjudge the quantity thereof found to be necessary to irrigate said lands for ordinary agricultural purposes, and that all the defendants in said cause be perpetually enjoined from in any wise interfering with or disturbing the priorities so established under the judgment, and that plaintiff have water at all times for stock and domestic uses. Neither plaintiff nor defendants will be allowed costs in the production of further evidence to determine the quantity of water appropriated.

DUNBAR, FULLERTON, ANDERS, MOUNT, WHITE, and HADLEY, JJ., concur.