[No. 17750.  Department One.  May 14, 1923.]

## In the Matter of the Determination of the Right to the Use of the Waters of Doan Creek.

## THE STATE OF WASHINGTON, *Appellant*, v. L. E. McBEE, *Appellant*, STELLA E. COFFIN *et al.*, *Respondents*.[1]

WATERS AND WATER COURSES (1, 11)—WATERS OPEN TO APPROPRIA‑ TION—PRIORITY OVER RIPARIAN RIGHTS. The prior appropriation of waters upon the unsegregated portions of the public domain, once established, vests right to the water superior to riparian rights and subsequent appropriations.

SAME (1)—WATERS OPEN TO APPROPRIATION—SEGREGATION OF PUB‑ LIC DOMAIN—SELECTION OF LIEU LANDS. The selection of indemnity lands by county commissioners in lieu of school sections 16 and 36, as authorized by the Act of Congress if actually occupied by set‑ tlers before survey, did not amount to a segregation of the lands from the public domain prior to the admission of the state into the Union, and did not prevent the appropriation of waters thereon.

SAME (2) — APPROPRIATION — PERSONS ENTITLED — LESSEES ON SCHOOL LANDS. Persons holding portions of school lands as lessees from the state had no interest, or any intent of acquiring any in‑ terest in the land which would entitle them to become *bona fide* appropriators of the waters of a stream for the benefit of the land.

SAME (22-25)—RIPARIAN RIGHTS—NATURE—PERSONS ENTITLED. Riparian rights on a stream on school lands cannot attach prior to the sale of the lands by the state.

SAME (20)—APPROPRIATION—EVIDENCE OF INTENT—SUFFICIENCY. Evidence that the use of waters of a stream for irrigation com‑ menced in 1871 and gradually increased, is insufficient to establish a prior intent to appropriate sufficient water to ultimately irri‑ gate 125 acres, and at most establishes an appropriation for 60 acres, where that was all that was irrigated until the early 90's, after which the evidence as to what was done is very vague and uncer‑ tain, and 125 acres was not irrigated until between 1910 and 1914.

SAME (99) — IRRIGATION — REGULATION OF SUPPLY AND USE — AWARDS AND DUTY OF HYDRAULIC OFFICIALS. Objection to the hy‑ draulic engineer's awards of water for irrigation, and the fixing of a reasonable duty of one cubic foot per second for seventy five acres, cannot be objected to as an unwarranted interference with

[1]Reported in 215 Pac. 343.

vested rights; since the water code saves all vested rights and it is the duty of the state supervisor to regulate the use of the water in conformity to law, under the supervision of the courts.

Cross-appeals from a judgment of the superior court for Walla Walla county, Mills, J., entered June 1, 1922, in favor of the defendants, in an action to determine the right to the use of the waters of a stream for irrigation. Reversed.

*The Attorney General* and *Fred J. Cunningham, Assistant,* for appellant State of Washington.

*Gose & Crowe,* for appellant McBee.

*Herbert C. Bryson,* for respondents.

HOLCOMB, J.—This complicated proceeding originated in a petition filed by M. C. Moore & Sons, a corporation, with the state hydraulic engineer, now the state supervisor of hydraulics, praying for the determination of the relative rights to the use of the waters of Doan creek, in Walla Walla county, Washington. Doan creek is a small stream arising from springs on land known as the Oakley Johnson place, running westerly through the lands of the various owners who are parties to this proceeding, and flowing into Mill creek just above its confluence with the Walla Walla river, about four miles westerly from the source of the stream. It is fed throughout its flow by numerous small springs on the lands of the various riparian owners. It traverses a section of the Walla Walla Valley where the first pioneer settlements in that region were made, the lands at its mouth having been originally entered by Marcus Whitman.

Appellant McBee succeeded to the rights and interests of M. C. Moore & Sons, a corporation, and the Baker Loan and Investment Company, purchasing lands in section 33, about the middle course of the

stream, and below the lands of one DeRuwe, in section 34, who purchased his lands from one Jennie McArthur, section 34 constituted lieu or indemnity school lands selected by the county commissioners of Walla Walla county in lieu of section 36, under the Federal law providing therefor, in 1863. The indemnity school lands became the property of the state of Washington upon its admission as a state to the Union, in November, 1889, or probably dating back to the Enabling Act in February, 1889. The school lands were leased from time to time until sold by the state in June, 1909.

The proceedings were initiated and maintained under the provisions of the water code of Washington, Laws of 1917, p. 447 (Rem. Comp. Stat., § 7351) [P. C. § 7203], and proceeding thereunder the then hydraulic engineer caused notice to be given of the filing of the petition and of the hearing thereon to be had, to all of the persons claiming the right to divert water from the stream. Section 15 of the law, pp. 454-455 (Rem. Comp. Stat., § 7365) [P. C. § 7217], provides that a summons shall be issued at the direction of the superior court, naming the return day of the summons. In the proceedings the various landowners answered the petition and set up their claims or rights in conformity with § 17, pp. 455-456, Laws of 1917 (Rem. Comp. Stat., § 7367) [P. C. § 7219]. The hearing was then had before the state hydraulic engineer, who took the testimony as referee, in accordance with § 19, p. 456 (Rem. Comp. Stat., § 7369) [P. C. § 7221]. Upon the return of the report of the hydraulic engineer, as referee, in pursuance of § 20 of the water code (Rem. Comp. Stat., § 7370) [P. C. § 7222], the court made an order fixing the time and place for hearing the claims, which was had, and the evidence taken before the engineer was received by the court. Objections were

made to the report and recommendations of the referee, and upon the hearing thereof the trial court made the following memorandum and order:

"Before attempting to analyze the evidence it is deemed advisable to make a general survey of the law of this state with reference to the rights or use of water inasmuch as the parties to this proceeding variously claim rights of appropriation, riparian rights, and rights by prescription.

"The lands involved in this proceeding were settled as follows, according to the findings of the referee:

"Swegle, 1846; McBee, 1863; Johnson, 1874; McArthur or DeRuwe, 1877; Coffin, 1879; Showerman, 1880.

"Therefore under the rules laid down there could have been water appropriated for the benefit of the lands which were early settled as against those lands later settled, and while the later lands remained public lands, and only to that extent. The Swegle lands, for instance, may therefore have a right by appropriation as against all the other lands, but under the law it had annexed inseparably to it a riparian right which could not be divested in favor of any of the other lands involved, by appropriation. The Showerman lands, on the other hand, being the latest in time of settlement would be subject to such rights of appropriation as had become vested in favor of all the other lands, and would have annexed to it its riparian rights, subject only to vested prior appropriations and its equal, but not greater or less, riparian rights with all the other land. As to the McArthur or DeRuwe lands it is probable that they remained public lands until the admission of the State into the Union, so that as against them appropriations could be made until 1889, but it is equally true that no title other than in the State would accrue to this land until 1909, so that it would seem that this land could not have acquired any water rights by appropriation, but of course has its riparian rights.

"As to all these lands there is evidence of some early irrigation. There was a ditch on the Swegle

place as early as 1874 or 1875. On the McBee place there was some irrigation as early as 1870 or 1871. There is testimony that of this tract about 20 acres were irrigated in 1884 or 1885. In 1874 the Johnson tract was irrigated. In 1882 three or four acres of it were irrigated. In the early seventies the McArthur tract was irrigated to some extent. As to the Coffin lands there is no showing of any irrigation prior to 1884 or 1885. The earliest irrigation shown of the Showerman tract cannot be earlier than 1881. While in some instances there is evidence as to the number of acres irrigated at these early periods, there is not, in a single case, any evidence as to the amount of water used, and in the absence of such evidence there is nothing upon which the court could decree any right by prior appropriation. *Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308.

"All of the land is riparian and their rights as such are fixed by the rules laid down, but in the present state of the evidence the court cannot decree those rights because of the peculiar situation surrounding them. There is not sufficient evidence to the amount of water naturally flowing in the creek over the various tracts.

"Have any of these parties acquired rights to the waters of the stream by prescription? The strongest showing in this respect is with respect to the McArthur and McBee lands. As to the McArthur lands, there is testimony that the water has been used for six or eight years. There is testimony that there was no shortage of water on the McBee lands until 1913 and 1914. As to the McArthur lands, Mrs. McArthur testified that she had been using all of the water for fourteen years, but she also testified that about as much water left the place as came onto it so that there could not have been such notice as would apprise the lower owners that their rights were being interfered with. As to the McBee tract the evidence is not essentially different in its effect. I conclude therefore, that there is no sufficient showing of adverse user to establish a right by prescription in favor of any of the lands.

"The case will be referred again to the State Hy-

draulic Engineer for the taking of further testimony and making further report herein. The referee will give reasonable notice to the attorneys of record for the respective parties of the time and place of such further proceedings. Any of the parties hereto may offer any additional evidence deemed to be material, but the referee is directed especially to

"1. To take such further evidence as may be offered by any party showing the amount of water actually appropriated at any time when a right by appropriation could have been acquired as against any of the other lands.

"2. Evidence and measurements of the natural flow of water in Doan Creek, which, without interference, flows onto each of the tracts.

"3. The amount of irrigable land in each tract.

"4. The amount of land that can be irrigated on each tract by any means of diversion, gravity, or otherwise, upon the land itself, without reference to the amount of water available for the irrigation of such tract.

"5. Evidence any party may see fit to offer relative to rights to divert water at points off his own land, or rights of way over lands of others.

"6. Make to the court any recommendations deemed advisable by the State Hydraulic Engineer."

The state hydraulic engineer, as referee, thereupon proceeded to take further testimony, after due notice, which was thereafter reported to the court, together with substantially the same findings of fact, conclusions of law, and recommendations to the court as had been previously made. In his report he called attention to the fact that evidence of the conditions as to the land and water actually used by any settler at so remote a time as most of the lands were occupied was impossible to obtain so as to fix the amount of water used, and the number of acres irrigated, with certainty. He asked that the original report be confirmed, but he also submitted an alternative schedule of rights,

asking the court that in the event the schedule based entirely upon rights by appropriation could not be approved, that the one recognizing the dual system of rights be adopted.

The trial court, however, was of the opinion that the evidence was insufficient to support any rights by appropriation, and adopted a schedule of rights based entirely upon the doctrine of riparian rights, and fixing the percentages or proportions merely of the waters of the stream based upon the entire irrigable acreage of each owner upon the stream.

The first report and schedule of the hydraulic engineer, based entirely upon the rights by appropriation, dating from the initiation of the rights by diversion from the stream upon lands owned or occupied by the appropriators, will not be set out because, as the court properly found, it cannot be sustained.

We have so often held that the law of riparian rights, modified to the extent of reasonable use by the riparian owners and to the extent of appropriations upon public lands, obtains in this state, since the very early case of *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107, down to the recent case of *Smith v. Nechanicky,* 123 Wash. 8, 211 Pac. 880, that it is unnecessary to lengthen this decision by citing them all.

On the other hand, however, we have recognized the right of prior appropriation of water as against lands belonging to the public domain, until segregated from the public domain, and that such prior appropriation, once established, is superior to riparian rights and subsequent appropriations. *Benton v. Johncox, supra; Isaacs v. Barber,* 10 Wash. 124, 38 Pac. 871, 45 Am. St. 772, 30 L. R. A. 665; *Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308; *Sander v. Wilson,* 34

Wash. 659, 76 Pac. 280; *Nesalhous v. Walker,* 45 Wash.
621, 88 Pac. 1032; *Kendall v. Joyce,* 48 Wash. 489, 93
Pac. 1091; *Mason v. Yearwood,* 58 Wash. 276, 108 Pac.
608, 30 L. R. A. (N. S.) 1158; *Avery v. Johnson,* 59
Wash. 332, 109 Pac. 1028; *Still v. Palouse Irr. & P. Co.,*
64 Wash. 606, 117 Pac. 466; *Sander v. Bull,* 76 Wash.
1, 135 Pac. 489; *Smith v. Nechanicky, supra; Weiten-
steiner v. Engdahl, post* p. 106, 215 Pac. 378.

McBee, appealing, claims that the court erred in its
finding as to the date and effect of the appropriation
of water of Doan creek by McBee's predecessors in
interest, and in its conclusions as to the law respecting
the same, to the effect that McBee has no right by
prior appropriation superior to that of defendant
DeRuwe, and of the other defendants, sufficient in
quantity to irrigate economically and not wastefully
125 acres of McBee's land.

The state of Washington, appealing, contends, first,
that the underlying principle upon which the original
report of the referee is based conforms to the law, and
that the schedule of rights contained in that report is
equitable, definite and practicable; or, second, that, in
any event, the record shows clearly that the claimants
in at least two cases are entitled to rights by appro-
priation as indicated in the referee's alternative re-
port; and third, that the judgment of the trial court
does not conform to the provisions of the water code,
is inequitable, indefinite and against the best interests
of irrigation practice.

Respondent DeRuwe contends that his land, being
school land reserved from the public domain by the
act of Congress relating to school lands of the terri-
tory of Washington, passed in 1853, and the subsequent
act of 1859, setting aside sections 16 and 36 in each
township for school purposes; and where either of such

sections in any township are occupied by actual settlers prior to the survey thereof, authorizing the county commissioners of the county wherein the lands so occupied are situated to locate other lands belonging to the United States of an equal acreage within their respective counties, and the selection by the county commissioners, under the authority of these acts, of the lands now owned by DeRuwe, on July 30, 1863, as lieu school lands, separated this land from the public domain at the time of the selection by the county commissioners for and on behalf of the territory, and this rendered the land subject to the riparian law. It is also contended by DeRuwe that occupants of these lands under lease from the territory and state began irrigation of this land as early as 1877, and that, therefore, rights were initiated by appropriation which attached to the land and are superior to those of McBee and the other defendants.

The status of the DeRuwe land, as to when it became riparian with reference to the other owners and appropriators, is a particular question in this case, and we will examine that first.

The acts of Congress in question relied upon by respondent DeRuwe merely reserved sections 16 and 36 in each township for the purpose of being applied to the common schools, and authorized the selection of lieu lands where such sections in any township had been occupied by actual settlers prior to the survey thereof. The selection of the lieu or indemnity lands by the county commissioners on behalf of the territory, could not, and did not, amount to any segregation of the lands from the public domain, unless implementing an actual but incomplete grant. This was merely an act authorized and done for the purpose of saving the entire quantity of the lands reserved for school purposes.

The case cited by respondent, *Bardon v. Northern Pac. R. Co.,* 145 U. S. 536, involving the severance of railroad granted lands from the lands of the public domain upon the filing of a map of definite location, lands to the territory, and no such words were used in point. There, as was stated in the opinion, the grant was one *in presenti,* and the words "there be and is hereby granted" were those of absolute donation. No such words were used in the acts reserving the school lands to the territory, and no such words were used in any such grant until the Enabling Act was passed by Congress in February, 1889. These words were then used, after specifying the lands: "They are hereby granted to such states for the support of the common schools." That then became a grant *in presenti,* and when the state was formed and formally accepted into the Union, the grant could do no more than relate back to the Enabling Act which gave it life. We have held in *Peterson v. Baker,* 39 Wash. 275, 81 Pac. 681, "The act of March 2, 1853, was simply a declaration of governmental policy, and the title to sections 16 and 36 therefore remained in the general government, subject to the domination and control of Congress, until otherwise appropriated or disposed of." We there cited *Barkley v. United States,* 3 Wash. Terr. 522, 19 Pac. 36, to the effect that sections 16 and 36 were lands of the United States within the provisions of the Act of February 25, 1885, and that these school lands were reserved to the United States and under the actual control of Congress until granted to the state or territory.

We therefore hold that the DeRuwe land was not segregated from the public domain in any respect until the admission of the state into the Union in 1889. Prior to that time Congress had passed an act called the "Desert Land Act", March 3, 1877, U. S. Compiled

Statutes, §§ 4674-4678, granting the right of appropriation of water for mining, irrigation, etc., from any streams and bodies of water upon the public lands. After the passage of that act, it might have been questioned whether or not the state took the lands granted by the United States government subject to any riparian rights at all. However, we have adhered to the doctrine of riparian rights, and the Federal courts have uniformly recognized whichever doctrine applies in the state as to title to lands and water after its admission. Whatever rights the state had in the water annexed to the school land did not pass to any grantee until June, 1909. Those holding land prior thereto as lessees from the state, having no interest in the land, no intention of acquiring it, could not be considered, under several of our decisions, to have been *bona fide* appropriators of the water of a stream to the benefit of the land. *Nesalhous v. Walker; Avery v. Johnson,* and *Kendall v. Joyce, supra.*

There were no rights by prior appropriation attached to the DeRuwe land, therefore, and the riparian rights did not attach until June 1909. The trial court properly held, upon the facts adduced, that there was no prescriptive rights acquired by any of the parties to this proceeding.

The next question is, were there any appropriations of the water of the stream prior to the riparian rights of DeRuwe and the lower owners?

The evidence as to the irrigation of the McBee land shows at the most the irrigation of about 60 or 70 acres up to the early 90's. After that time, for some years the area of the land irrigated was variable or dormant. Some years there were only 30 or 40 acres irrigated. Shortly before the trial, 125 acres had been brought under irrigation. It is claimed on behalf of McBee

that his predecessors having diverted water from Doan creek in 1871, it must be inferred that it was the intention of the persons diverting the water at that time to increase the area they irrigated until the full 125 acres then and now susceptible to irrigation were irrigated from the stream, and that they did increase the irrigable area with reasonable expedition until they are now irrigating the full 125 acres, and that the use of the water upon such acreage is prior in time and in right, and superior to the rights of all or any of the other defendants to irrigate their lands from Doan creek. There is evidence that, between 1910 and 1914, about 125 acres of the McBee land was irrigated from Doan creek. What was done between the early 90's and 1910 to 1914 is very vague and uncertain. While if the irrigation of the land was continually being increased from year to year, as was the case in *Offield v. Ish,* 21 Wash. 277, 57 Pac. 809, showing diligence and good faith in the acquisition of the water right and its application to a beneficial use, the intention to appropriate water for the entire 125 irrigable acres would be presumed and sustained; as the only evidence there is of diligence in the diversion and application of the water to beneficial use was that it had grown gradually up to the irrigation of 60 or 70 acres in the early 90's, we think it can hardly sustain an appropriation for 125 acres. Our judgment is that it should be fixed at 60 acres, under the evidence, with a water duty of one second foot for seventy-five acres, as found to be reasonable and necessary by the hydraulic engineer.

By the alternative schedule filed by the hydraulic engineer only the lands of Irene Swegle, a minor, Florence Swegle, a minor, and May Swegle Sheldon, aggregating 12.5 acres, the water for which was appropriated and used in 1875, and the lands of McBee, as grantee of M. C. Moore & Sons and the Baker Loan & Invest-

ment Company, the water for which was appropriated in 1871, and which the report of the engineer allowed for 125 acres, are given rights by appropriation. All the balance are awarded riparian rights. None of the landowners or users are here complaining except McBee; and respondent is asserting his rights under the decree of the lower court.

The alternative schedule of the engineer was worked out under the decisions in *Offield v. Ish; Longmire v. Smith; Nesalhous v. Walker* and *Sander v. Bull, supra.* We are of the opinion that the *Sander* case fully sustains the principles upon which the schedule or referee's report is based, with the exception of the acreage for which the water right was given to appellant McBee, which, in our opinion, should be 60 acres instead of 125 acres.

We are also of the opinion that the duty of water for the lands in question in that climate and under the conditions existing there, as fixed by the hydraulic engineer at one cubic foot per second for seventy-five acres of land, is reasonable and proper, and appellant McBee concedes it to be so. It should be adopted as the basis for the apportionment of the water as adopted by the engineer.

Respondent contends that the irrigation code was never intended to regulate the use and occupation of vested and established water rights in a stream where admittedly there is no surplus water, and in fact insufficient water to supply the needs and demands of those having vested rights therein; and that it is inconsistent that the law clearly fixes and establishes an important property interest and vested property right as belonging absolutely to individuals, and yet permits or authorizes a quasi public agency to exercise practically complete domination and control over that right.

The water code saves all existing rights in land and water. Our decisions have consistently preserved them. That, however, does not militate against the right of the state, in the exercise of a supervisory control, of administering the use of the water for the public welfare, according to the various and definite rights of all parties in the water. It will be the duty of the state supervisor of hydraulics, under the direction and supervision of the court in such a proceeding as this, to proceed to regulate the use of the water in conformity with the law.

The decree is reversed, and the cause remanded with instructions to the court below to put into effect the alternative schedule of the supervisor of hydraulics as modified by this opinion, and to apportion and record the respective rights in the water to the parties hereto in accordance therewith.

MAIN, C. J., MITCHELL, BRIDGES, and MACKINTOSH, JJ., concur.