[No. 12095.  Department Two.  September 26, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Ham,
Yearsley & Ryrie, Plaintiff*, v. THE SUPERIOR
COURT FOR GRANT COUNTY, *Respondent*.[1]

ACTION—STAY—PENDENCY OF OTHER ACTION—DISCRETION OF COURT. It is a proper exercise of the court's discretion to order a stay of ·condemnation proceedings seeking to appropriate lands at the outlet of a lake for use in an irrigation project, where another action is pending in the same court to quiet title to all the waters of said lake by parties who have succeeded to the rights of the original defendants in the condemnation proceeding and have been made additional claimants therein, and who claim the waters of said lake independent of their interest as grantees of the original condemnees, even though the condemnation suit has proceeded so far as to adjudicate in favor of the plaintiff's right to acquire the land by right of eminent domain; since the subject-matter of the two actions are so related to one another, and the establishment of the claimant's rights to all of the waters of the lake will deprive plaintiff of the fruits of a condemnation award to the land sought, that the interests of the litigants and of the public will be best served by a prior determination of the title to the waters of the lake.

Application filed in the supreme court May 28, 1914, for a writ of mandamus to compel the superior court for Grant county, Steiner, J., to proceed with the trial of a cause. Denied.

[1]Reported in 143 Pac. 310.

*Voorhees & Canfield*, for relator.

*Ralph B. Williamson* and *Cannon, Ferris & Swan*, for respondent.

Parker, J.—This is an original mandamus proceeding in this court wherein the relator seeks to compel the superior court for Grant county to proceed with the trial of the assessment of damages and compensation in the condemnation proceeding of Ham, Yearsley & Ryrie, this relator, against the Northern Pacific Railway Company *et al.*, and the annullment of an order of that court staying proceedings therein until another action pending in that court is tried and determined, wherein certain of the defendants, additional claimants in the condemnation proceeding, are seeking to quiet their title to the waters of Moses Lake as against the claims of the relator thereto, upon which claims the right of the relator to acquire the land by condemnation proceedings rests.

The history of this controversy appears in considerable detail in our decisions upon certain questions presented in *State ex rel. Ham, Yearsley & Ryrie v. Superior Court*, 70 Wash. 442, 126 Pac. 945, and *State ex rel. Grant Realty Co. v. Superior Court*, 76 Wash. 376, 136 Pac. 144. The facts appearing in the record before us, so far as necessary to be here noticed, may be summarized as follows: On October 7, 1910, the relator commenced condemnation proceedings in the superior court for Grant county against the Northern Pacific Railway Company *et al.*, owners of a small tract of land at the southern outlet of Moses Lake, to acquire the land for a dam site to be used in connection with the relator's prospective irrigation project. Soon thereafter, notice of the pendency of the condemnation proceeding was duly filed and made of record in the auditor's office of Grant county. On January 10, 1912, the superior court for Grant county, having regularly before it the preliminary questions of public use, necessity and the relator's right to acquire the

land by condemnation, rendered its judgment denying relator's right to prosecute the condemnation proceeding or acquire the land by right of eminent domain. On October 10, 1912, this judgment of the superior court, being before this court upon *certiorari* proceedings, was reversed and the cause remanded to the superior court with directions to allow the relator to acquire the land by condemnation and enter its preliminary order accordingly, which was done September 9, 1913. Thus it became adjudicated, as between the relator and the original defendants in the condemnation proceeding, that the relator had the right to condemn the land and acquire the same by right of eminent domain. This adjudication was based upon facts as they existed on January 10, 1912, the date of the disposition of that question adverse to the relator by the superior court. Upon the record as made in the superior court up to that date, and as presented to this court upon *certiorari* from that court, the right of the relator to condemn and acquire the land by right of eminent domain rested upon its right to the waters of Moses Lake as then appearing, since the future existence of the relator's irrigation project depended upon its right to such waters; that is, its ability to devote the land sought to be condemned to public use depended upon its right to the waters of Moses Lake, there being no other water available for its irrigation project. Thereafter, on October 14, 1913, the superior court for Grant county entered an order in the condemnation proceeding in disposing of certain motions made therein, reciting, among other things:

"It further appearing to the court, however, that the said Grant Realty Company, Manhattan Realty Company, Nashota Realty Company, Pelican Realty Company, Stade Realty Company, Neppel Townsite Company, Park Realty Company, McConihe-Moses Lake Irrigation Company and F. H. Nagel, have an interest in the subject-matter of this action, and that a complete determination of the controversy cannot be had without the presence of said parties,

"It is ordered that pursuant to section 196 of Remington & Ballinger's Code the said parties, to wit, Grant Realty Company, Manhattan Realty Company, Pelican Realty Company, Nashota Realty Company, Stade Realty Company, Neppel Townsite Company, Park Realty Company, McConihe-Moses Lake Irrigation Company and F. H. Nagel and all of them shall be made additional parties defendant or claimant and shall appear herein without service of process to which the above named parties agree in open court. . . ."

For convenience, we will hereafter refer to these new parties as additional claimants. The claim of interest of these additional claimants in the condemnation proceeding is rested upon their claim as grantees of the Northern Pacific Railway Company and the other original defendants who conveyed their title to the land sought to be condemned to these additional claimants, pending the condemnation proceeding, and also the claimed right of the additional claimants to the waters of Moses Lake, independent of their interest as grantees of the Northern Pacific Railway and other original plaintiffs in the condemnation proceeding. Thereafter, on November 19, 1913, these additional claimants filed in the condemnation proceeding a motion asking the vacation of the preliminary order of condemnation in favor of the relator as against the original defendants therein, with a view to having the question of the relator's right to condemn and acquire the land by right of eminent domain as against these additional claimants tried anew, claiming that the relator had no such right of condemnation as against these additional claimants because of their right to all of the waters of Moses Lake, which right, as we have seen, if successfully maintained by these additional claimants, would render of no avail the relator's right to appropriate and put to public use the land sought to be condemned. On the same day, to wit, November 19, 1913, these additional claimants commenced an independent action in the superior court for Grant county, seeking to quiet their title to the waters of Moses Lake as against the relator, setting up their claim of right

thereto substantially as in their motion made in the condemnation proceeding. The fact of the commencement of such action in the superior court was also set up in their motion filed in the condemnation proceeding. By their motion in the condemnation proceeding, the additional claimants ask, among other things, that further proceedings therein, looking to the assessing of damages and compensation to be awarded for the taking of the land, shall be stayed until the right of the relator to condemn and acquire the land and also its right to the waters of Moses Lake, as against these additional claimants, shall have been determined. This motion coming on for hearing before the court on the 29th day of April, 1914, was, by the court, disposed of as follows:

"It is hereby ordered, adjudged and decreed that said motion be, and the same are hereby denied, save and except the motions of the additional claimants for a stay of all proceedings herein, which motion is granted, and all proceedings herein are stayed until the action now brought and pending in the above entitled court, wherein The Grant Realty Company, a corporation, *et al.*, are plaintiffs, and Ham, Yearsley & Ryrie, a corporation, *et al.*, are defendants, the same being cause No. —— of the records and files in the office of the clerk of the above entitled court, has been tried and determined.

"It is further ordered that the additional claimants herein are given leave to make further application to this court for a vacation of the order of appropriation in this case, should it be necessary for said additional claimants to have such order vacated after the said cause above referred to has been determined in this court."

It is to annul this order and compel the superior court for Grant county to proceed with the trial of the assessment of damages and compensation for the taking of the land, that this mandamus proceeding is here prosecuted.

A statement of these facts renders it apparent that we have here two pending actions in the same court, wherein the issues are so related as to possibly result in much useless and

fruitless litigation if the questions involved be not disposed of in proper order.  It is argued by counsel for the relator that these additional claimants have no standing whatever in the condemnation proceeding except as mere successors in interest of the original defendants therein, owners of the land sought to be condemned.  Also, that the right of the relator to condemn and acquire this land has been adjudicated finally in its favor so that that adjudication cannot now be challenged even by these additional claimants, claiming the waters of Moses Lake independent of their interest as grantees of the original defendants in the condemnation proceeding.  This presents the interesting inquiry: Is such an adjudication final in favor of the condemner as against additional claimants, whom it may become necessary, in the judgment of the court, to bring into the condemnation proceeding as defendants, after the preliminary appropriation adjudication.  This is a question of serious moment, and we think the learned trial court was warranted in deferring its decision thereon pending the determination of the additional claimants' rights to the water of Moses Lake, in the pending action involving such rights.  Should the decision in that action be in favor of the additional claimants, it would render the relator's condemnation proceeding of no avail to it unless we assume that it may, by virtue of the order of appropriation, in any event, now acquire the land without having the ability to put it to public use.  Such a decision would suggest strongly, if not conclusively, that the order of appropriation should be vacated, though it is seemingly a final judgment on that question in relator's favor.

We do not wish at this time to be understood as expressing any opinion upon the question of the finality of the preliminary order of condemnation rendered by the superior court in compliance with the decision of this court in favor of the relator, as against these additional claimants.  However, in view of the circumstances surrounding the whole controversy, we are of the opinion that the learned superior court did not

abuse its discretion in so controlling the order of the disposition of the two causes as to first cause the question of the right of the respective parties to the waters of Moses Lake to be determined, in view of the possible influence that the disposition of that question may have upon the relator's right to acquire and hold the land by right of eminent domain. We think that both the interest of the litigants and the interest of the public will be best served by proceeding in the order directed by the learned superior court. In *State ex rel. McDonald v. Steiner*, 44 Wash. 150, 87 Pac. 66, and *State ex rel. Murphy v. Snook*, 78 Wash. 671, 139 Pac. 764, some observations will be found in harmony with the conclusion we here reach.

The order of the learned trial court sought to be annulled is affirmed, and the writ prayed for is denied.

CROW, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.