[No. 18920. Department Two. April 13, 1925.]

*In the Matter of the Rights to the Use of the Waters of Crab Creek and Moses Lake.*

THE STATE OF WASHINGTON, *Appellant,* v. DAVID A. ALLEN *et al., Respondents.*[1]

WATERS (8)—APPROPRIATION—PRIORITIES—FAILURE TO FILE NOTICE —STATUTES. The water code, Rem. Comp. Stat., § 7351, providing a statutory notice of appropriation of state waters for irrigation, was not intended to provide an exclusive method of acquiring the right to use waters; so that an actual prior appropriation and devotion to a beneficial use under prior laws gives the appropriator a right prior to a subsequent appropriation by notice under the water code.

SAME (8). The right to appropriate state waters for irrigation does not depend upon the navigability or non-navigability of the water appropriated.

SAME (8)—RIGHT TO APPROPRIATE—NOTICE—BENEFICIAL USE. A landowner who, under former laws, began the actual use of waters

[1]Reported in 235 Pac. 37.

for irrigation upon an irrigable tract intending to subject the entire tract to irrigation, and extended the irrigable area with reasonable diligence, has a right to water for the entire tract superior to the rights of a subsequent appropriation by notice under the water code, Rem. Comp. Stat., § 7351.

SAME (99)—IRRIGATION—REGULATION OF USE—DECREE—FINDINGS OF HYDRAULIC ENGINEER. An appropriation of waters of a lake by notice under the water code, Rem. Comp. Stat., § 7351, showing the intent to make a storage basin of the lake by damming the outlet and conveying the waters of the reservoir by means of canals to the lands to be irrigated, precludes any claim of right to use all the waters of the lake and justifies the hydraulic engineer in establishing the level of the lake for the basis of storage at the point where it had stood for a long time, thereby preserving the rights of all concerned and maintaining its navigability.

SAME (99)—IRRIGATION—REGULATION OF USE—PRIORITIES—DECREE —CONSTRUCTION. A decree of appropriation of the waters of a lake, reserving to each of the defendants the right to use so much of the water as is reasonably necessary for domestic and stock use, on their respective lands, as set forth in the "foregoing schedule," does not give such prior right to all the defendants but to only those named in the schedule of priorities, in the order named.

SAME (99)—APPROPRIATION—DILIGENCE—EVIDENCE—STATUTES. In condemnation proceedings to acquire a dam site and right of way for the irrigation of nonriparian lands by the diversion of the waters of a lake, appropriated under Laws of 1891, p. 328, § 3, the time reasonably consumed in the condemnation suit, which was resisted by subsequent appropriators and riparian owners, must be construed as time necessarily consumed in the performance of the work of construction, in determining the question of plaintiff's diligence and whether his rights will relate back to the time of his appropriation, under such act, which provides that the appropriator must commence construction of the works within three months after the posting of notice.

SAME (99). No lack of diligence appears, where appropriators placed equipment on the ground and started to build a dam as soon as the right to do so was established in the supreme court, and petitioned the hydraulic engineer to determine the relative rights to the waters pending litigation, and there is still pending an action to prevent them from building the dam for the storage reservoir.

WATERS (99)—IRRIGATION—REGULATION OF USE—RIGHTS UNDER APPROPRIATION. Where the first appropriation of the waters of a lake was for distant lands, but a subsequent notice was for the irrigation of lands surrounding the lake, an award of water for the

latter is properly made, subject to the first appropriation, which has priority.

CONSTITUTIONAL LAW (6)—WATERS (1)—APPROPRIATION—SCHOOL LANDS—RIPARIAN RIGHTS—CONSTITUTIONAL PROVISIONS — CONSTRUCTION. Article 21 of the state constitution dedicating all the waters of the state to the public for the purpose of irrigation, must control the enabling act, granting to the state sections 16 and 36 of every township for the use of public schools, if the same is conflicting by reason of the fact that the grant of the fee includes non-navigable waters on the school land; but construing the acts as in *pari materia*, the state must be held to have waived the riparian rights to school lands, by Art. 21, dedicating such waters to the public for the purposes of irrigation; and accordingly an appropriation of the waters of a lake and its source under the water code may include the riparian rights on school lands belonging to the state.

WATERS (21)—APPROPRIATION—PRIORITY OF RIGHTS—JUDGMENT—CONCLUSIVENESS. Litigation carried through the supreme court, determining the right to appropriate the waters of a lake, is conclusive on all parties to the proceedings and their predecessors in interest, upon the points decided.

WATERS (99)—REGULATION OF USE—FINDINGS OF HYDRAULIC ENGINEER—APPEAL—REVIEW. The findings of the hydraulic engineer establishing the level of a lake, to be used as a reservoir for irrigation purposes, will not be disturbed on appeal on the ground that it interferes with its navigability, where it stood at that level before the first appropriation of its waters was made and the supreme court then determined that it was navigable at that level.

Cross-appeals from a judgment of the superior court for Grant county, Nichoson, J., entered May 5, 1924, adjudging the rights of claimants to the use of waters for irrigation, tried to the court. Affirmed.

*W. M. Clapp, Canfield & Voorhees,* and *Merritt & Curtiss,* for appellant Ham, Yearsley & Ryrie.

*The Attorney General (Fred J. Cunningham,* of counsel), for cross-appellant State of Washington.

*Daniel T. Cross* and *Carroll B. Graves,* for cross appellants J. R. Allen *et al.*

*Ralph B. Williamson,* for cross-appellant Grant Realty Company *et al.*

MACKINTOSH, J.—The prior chapters of this litigation were written by this court in *State ex rel. Ham, Yearsley & Ryrie v. Superior Court,* 70 Wash. 442, 126 Pac. 945; *State ex rel. Grant Realty Co. v. Superior Court,* 76 Wash. 376, 136 Pac. 144; *State ex rel. Ham, Yearsley & Ryrie v. Superior Court,* 81 Wash. 690, 143 Pac. 310; *Grant Realty Co. v. Ham, Yearsley & Ryrie,* 96 Wash. 616, 165 Pac. 495; *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.,* 107 Wash. 378, 181 Pac. 898; *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.,* 110 Wash. 467, 188 Pac. 527; *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.,* 115 Wash. 286, 197 Pac. 43, where can be found the statement of facts, which it is unnecessary to repeat in this opinion.

The present chapter concerns the determination of the various water rights to Crab creek and Moses lake. Pending the appeal determined in *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.,* 115 Wash. 286, 197 Pac. 43, the several claimants to the water involved, on January 3, 1921, filed with the state supervisor of hydraulics their claims of right to divert such water, and asked for a determination of those rights in accordance with the provisions of the water code, ch. 117, Laws of 1917, p. 447 [Rem. Comp. Stat., § 7351]. After the filing of the proper data in that court in July, 1921, the superior court of Grant county made an order directing summons to be issued. In April, 1922, those defendants who had failed to appear were defaulted and the superior court preferred the proceedings to the state supervisor of hydraulics to take testimony as referee. In June of that year the supervisor held his first hearing, and in April, 1923, made his report, which on May 5, 1924, the court accepted, with a few modifications, as the basis of its decree, which on that date was filed, and from which this appeal is prosecuted.

The appellants and cross-appellants have filed eight

separate briefs in this matter and have raised a number of objections to the decree based on the report of the state supervisor of hydraulics. To avoid as much confusion as possible these several claims of error will be treated separately. It should be said here that the court placed the principal rights of Ham, Yearsley & Ryrie in class four.

(1)  Ham, Yearsley & Ryrie object to the decreeing under class two of the Moses Lake Horticultural Company of water rights on 120 acres of land as superior to their rights. This assignment rises from this situation: Sometime prior to 1908, the predecessor of the Moses Lake Horticultural Company, being the owner of 120 acres of land on Moses lake, pumped from the lake water to irrigate 20 of the acres which he had under cultivation. This use was made without any statutory notice of appropriation having been given. Ham, Yearsley & Ryrie filed their first appropriation notice on January 20, 1909. They contend that, in the absence of a filing by the horticultural company (we will use this name to designate the Moses Lake Horticultural Company and its predecessor), their rights are superior for the reason that they had filed and appropriated in accordance with the statute, and that, in any event, if the horticultural company is entitled to any water, it would be only sufficient to irrigate the twenty acres being irrigated at the time of the Ham, Yearsley & Ryrie notice, and not an amount sufficient to irrigate the entire 120 acres owned by the horticultural company. In other words, it is the claim of Ham, Yearsley & Ryrie that the right to use the waters belonging to the state can be acquired only by compliance with the Laws of 1891, p. 327, and that the horticultural company not having complied with those statutes, and they having done so, Ham, Yearsley & Ryrie's rights are superior; that the horticultural com-

pany was a user of the water only by sufferance until such time as someone complying with the statute by filing notice should appropriate to a beneficial use the waters; and in addition, that the horticultural company could not have acquired any right to use the water by adverse user, for the reason that title by adverse possession cannot be acquired against the state, which is the owner of the water.

The answer to these contentions seems to be that Laws of 1891, p. 327, do not provide the exclusive way by which water can be appropriated. That law governs the rights here in controversy, being the law in force at the time the rights arose, and those rights being preserved by the water code, ch. 117, Laws of 1917, p. 447, § 1 [Rem. Comp. Stat., § 7351]. The statute does not express the intention to create an exclusive method, but it seems that the statute extended rather than restricted the privilege of securing rights to water by appropriation. The supreme court of Utah, in *Patterson v. Ryan*, 37 Utah 410, 108 Pac. 1118, considering a similar statute, said this:

"The right to the use of water in this state has always depended upon whether the person claiming the water applied it to a beneficial use, and the notice and record required by the statute was merely prima facie evidence of the facts recited therein, namely, that he was applying the water to some beneficial use. Any person, however, who actually used the water for a useful or beneficial purpose acquired the right to take the water so used as against all subsequent claimants regardless of whether the user has posted notices or not."

This court in *Kendall v. Joyce*, 48 Wash. 489, 93 Pac. 1091, considered whether parties acquired rights as appropriators even though they failed to post and record notice of appropriation as required by statute the section of which we have before us, and quoted with

approval the following from 17 A. & E. Ency. Law (2d ed.), 498:

"The statutes requiring the posting and recording of a notice are not intended to change the rule as to what constitutes a valid appropriation, but simply, by requiring an appropriator to post and record a notice, to apprise other persons contemplating the diversion of water from the same stream that the appropriator has taken the first step towards securing his rights, and also to preserve the evidence thereof. It is accordingly held that notwithstanding the existence of these statutes, a valid appropriation may be made by an actual diversion and use of the water without posting any notice; and one who fails to comply with the statute requiring notice, but actually diverts and uses the water, acquires a good title in the absence of any conflicting adverse rights, and cannot be deprived thereof by another who complies with the statute at a time subsequent to the former's completed diversion. Thus the failure of an actual appropriator of water upon the public domain to post a notice as required by law does not affect his right to the water as against one subsequently acquiring the land from the government."

The subdivisions of the Laws of 1891, p. 328, § 4, which provide that a failure to comply with the rule relating to the posting of notices deprives an appropriator of the use of the water as against a subsequent appropriator who faithfully complies with the same, and § 8 of the above laws, providing that, in an appropriation begun but not completed prior to the passage of the act, the appropriator should comply with the provisions of the statute relating to notice, does not conflict with the decision in *Kendall v. Joyce, supra.* Section 5 of the same law determines the rights between intending appropriators who have made no actual use of the water, that as between those, the one first complying with the statute shall have the first right. Section 8 also refers to those who have

done nothing more than file their notices but have not begun the actual use of the water for irrigation.

Suggestion is made that there is a difference between the appropriation of water from navigable and non-navigable bodies of water. It is true that *Kendall v. Joyce, supra,* related to a non-navigable stream, but no reason is apparent why the rights of appropriators should depend upon the navigability or non-navigability of the water appropriated. The right to take the water depends upon its use, the posting of the notice does not give the right, but is a means of proving and preserving the right.

It would seem, therefore, that as to the horticultural company's actual use of the water for twenty acres, made before the paper appropriation by Ham, Yearsley & Ryrie, there can be no question but that the horticultural company is entitled to the continued use of that amount of water.

The question then arises whether the horticultural company is entitled to water for its entire 120 acres and is not confined merely to the right for twenty acres. The contention is that an actual appropriation by user, however good as against a subsequent appropriator posting notices, is only good for the amount of water actually in use at the time of the posting of the notice, and is not good as against subsequent paper appropriation for any further assertion of the right. Here rises the doctrine of relation, and that doctrine is based upon the theory that a person owning a tract of land susceptible of irrigation, who appropriates water by using it upon a portion of that tract, acquires the right not only to use it upon that portion, but upon the entire tract, if it is evident that he has used reasonable diligence in extending the irrigated area, for the reason that it is common sense to believe that one who has irrigable lands intends, when he starts to irrigate a

portion of it, to irrigate the whole of it as soon as it can reasonably be done, and that the notice given by the use of the water upon a portion of the irrigated area is notice that the user intends to appropriate water to irrigate the entire area. In other words, that the actual use of water upon a portion of the land is notice of an appropriation of sufficient water for all the land, in the same way that notice is given by the written notice of appropriation of the amount of the intended appropriation. This court, in *Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308, considered whether an actual appropriator was entitled to water for his entire irrigable area although he had actually used water upon only a portion of it, as against subsequent appropriators, where he had exercised reasonable diligence, and whether his appropriation would date from the beginning of his taking the water for the portion, the court saying:

"Certainly, when the possessory right to a definite tract of agricultural land was acquired by the settler, and made known by his residence and cultivation thereon, and by the use of water from the stream, the intention to appropriate and continue to use the water should be inferred; and the continuous use of the water for irrigation thereafter, and the extension of the area of cultivation with reasonable diligence, must confirm the appropriation from the beginning of the diversion; and the quantity of the water appropriated may also reasonably be inferred from the quantity of the land occupied, with its boundaries thus defined and claimed."

In *Sander v. Bull,* 76 Wash. 1, 135 Pac. 489, this occurs:

"Appropriation of water consists in an intention to appropriate followed by reasonable diligence in applying the water to a beneficial use."

In *In re Doan Creek,* 125 Wash. 14, 215 Pac. 343, the question was involved as to whether the landowner who begins the actual use for irrigation intends to irrigate the entire tract that is subject to irrigation, and the decree in that case confirms such view. It must follow, therefore, that, if the testimony shows that the horticultural company, after making use of the water for the twenty acres, with reasonable diligence extended it to the entire irrigable area, it has a right to the use of the water for the entire area. The testimony shows that such diligence was used, and we must hold that the decree was proper in awarding to the horticultural company water for all its 120 acres.

(2) It is claimed that the court erred in decreeing, under class three, water to Koch and Penhallock. The testimony shows that, in 1907, three Penhallock brothers settled on 160 acres each, adjacent to Moses lake, that two of the brothers still retain their property and one has sold to Koch. The referee found that the date of the initiation of their water rights was 1908, while Ham, Yearsley & Ryrie acquired their rights by notice in January, 1909. Although the testimony is that the Penhallocks did not actually use water to irrigate the entire 480 acres, still, before Ham, Yearsley and Ryrie had filed any appropriation, they had begun the use of the water and had made an actual physical appropriation to the extent of their then needs, and that they had continued using water for irrigating, domestic and stock purposes at all times since, and that they have used reasonable diligence in applying the water to so much of the land as is irrigable. The reasons stated under number one are applicable here, and the decree placing these rights in class three was proper.

(3) Ham, Yearsley & Ryrie object to the decree whereby the level of Moses lake is fixed at 1,038 feet

above sea level, and limiting their right to the use of water above such level. They claim that this water all belonged to the state and that the state by statute has made no provision limiting the use of the water to the height at which the lake will still be navigable, and that, under the appropriation law, they have a right to appropriate a certain amount of water and that their right to this water is absolute, no matter to what level the use of it might reduce the lake. A reading of the appropriation notices, the briefs submitted, and the decisions of this court in *State ex rel. Ham, Yearsley & Ryrie v. Superior Court,* 70 Wash. 442, 126 Pac. 945; *State ex rel. Grant Realty Co. v. Superior Court,* 76 Wash. 376, 136 Pac. 144; *Grant Realty Co. v. Ham, Yearsley & Ryrie,* 96 Wash. 616, 165 Pac. 495; *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.,* 110 Wash. 467, 188 Pac. 527, and *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.,* 107 Wash. 378, 181 Pac. 898, shows that, as is stated in the notices of appropriation, "it is the intention *to make a storage reservoir of said Moses Lake,* by placing a dam at the present outlet of said lake, and to convey the waters of said reservoir so created to the lands to be irrigated by means of canals, flumes and pipe lines or any combination of same." This would seem to dispose of the claim to the right to use all the water of the lake and justify the decree establishing the level, for, in order to determine that right, a level for the basis of the storage must be fixed.

The state hydraulic officer, with his customary care, study and consideration of the voluminous testimony, has fixed the level at 1,038 feet, a level at which the rights of all the claimants can be preserved, the navigability of the lake maintained, and a level at which the lake has stood for a long period of time. We see no reason for interfering with the decree in this respect. Especially compelling is the finding of the

hydraulic officer in a matter of this kind.  He is skilled in the determination of such questions and his fairness and industry are unquestioned, and this court is in no position to substitute its guess for his experience.  To attempt to interfere with the findings of fact of the referee in this action would create such a chaotic condition that this litigation would be interminable.  While we might succeed in taking the decree apart and in getting all the springs back into the case, it is certain that they would not be so arranged as to ever again work well.  On questions of law we may disturb the decree, but on questions of fact we will be slow to make any change.

(4)  Ham, Yearsley & Ryrie assert that the decree is in error in granting to other water claimants the use of Moses lake at all seasons of the year for domestic and stock purposes.  It is claimed that these claimants who were given this right are subsequent in time to Ham, Yearsley & Ryrie, and that the grant of the right to them is an infringement of their appropriation.  The basis of this claim of error is found in paragraph 7 of the decree, which reads as follows: "It is further ordered, adjudged and decreed that each of the above named defendants in this action is entitled to the continuous use, throughout the year, of so much of the waters of Crab Creek and Moses Lake as is reasonably necessary for domestic and stock use on their respective lands as set forth in the above and foregoing schedules."  Ham, Yearsley & Ryrie claim that this paragraph awards to every defendant in the action the right to use the water for stock and domestic purposes without regard to priority of rights of the respective defendants.  The paragraph should not be so construed.  It refers to the right to the use of the water for stock and domestic purposes "as set forth in the above and foregoing schedule."  The schedule of

priorities applies to the use of the water for stock and domestic purposes as well as for irrigating. The paragraph does not give subsequent rights priority over the Ham, Yearsley & Ryrie rights. They are to follow the order named in the schedule.

(5) Certain of the cross-appellants attack the validity of the claim of Ham, Yearsley & Ryrie to any water rights at the present time. This claim is based upon the fact that § 3, Laws of 1891, p. 328, provides that, in case the appropriation is made for the purpose of storage, the appropriator must, within three months after notice is posted, commence construction of works; and in case the use is by diversion, the appropriator must, within six months after notice is posted, commence the construction of the works, and that the work must be done diligently and prosecuted to completion unless delayed by the elements. Section 4 of the same laws provides that, by a strict compliance with the above rule, the appropriator's right to the water actually stored or converted relates back to the time notice was posted, but that failure to comply with the rule deprives the appropriator of the right to use the water as against subsequent appropriators who faithfully comply with the same. The argument is, that Ham, Yearsley & Ryrie having posted their appropriation notices in January, 1909, and the commencement of the construction of the work not having been begun within the statutory time, and not having been completed, that they have lost their rights by failure to commence in time or to diligently prosecute it to completion. It is true that the work was not begun within the time specified and that it has not been prosecuted to completion, but an excuse exists for this situation. The history of the litigation in which the parties have been involved in this court furnishes that excuse. This point was raised in *Grant Realty Co. v.*

*Ham, Yearsley & Ryrie,* 96 Wash. 616, 165 Pac. 495, the court saying:

"Appellants contend that the diligent and continuous performance of the actual physical work of construction and diversion to completion is a *sine qua non,* evitable only by the statutory excuse of temporary interruption by the elements. Respondent urges that delays in the actual work occasioned by litigation, especially if waged with the adverse claimant, must be excused. It seems to us that neither position is wholly correct. The first is too narrow; the second too broad. . . . Condemnation for a site for an impounding dam or intake by an appropriator who does not own such a site is just as much matter incident to the enterprise to which the dam or intake is an essential as is the actual construction of the dam or intake. It would be simply idle to confer, as our statute does confer, upon the owner of nonriparian lands the right to condemn for such purpose if the time necessarily consumed in the condemnation must be entered in red on the ledger of diligence and thus defeat his right of priority by relation, which the statute as a whole was intended to give. . . . The right to condemn is dependent upon the initiation of the right to use the water by valid notice of appropriation, since it is an incident to the diversion of the water. Whatever the general rule, such is the law of this case as declared by this court on the original review. 70 Wash. 442, 126 Pac. 945. . . . It follows that the prosecution of the condemnation proceeding is a necessary part of the prosecution of the work to completion in order to enable respondent to invoke the doctrine of relation. It follows further that, if respondent has prosecuted the condemnation for its dam site, 'diligently and continuously,' the time so consumed must be considered as employed in construction work. In the nature of the case, it is time just as necessary to the work of impounding and diversion as is the time necessary for the actual physical construction of the dam. The condemnation suit, therefore, is not matter of excuse from the performance of the work, but is itself matter of performance. . . . So long as the condemnation

suit is prosecuted with reasonable diligence, then, however long it may take to complete the condemnation, the rights of the parties to the water must be measured as of the date when the condemner posted and filed his notice of appropriation else ·the doctrine of relation can never exist where condemnation is necessary.''

The final decision of this court on the condemnation case was entered on the remittitur in the Grant county court in May, 1921. From that decision an appeal was taken to the United States supreme court, and the remittitur from that court was entered in Grant county August 14, 1922. Under the ruling of *Grant Realty Co. v. Ham, Yearsley & Ryrie,* 96 Wash. 616, 165 Pac. 495, Ham, Yearsley and Ryrie could not have been in default under §§ 3 and 4, Laws of 1891, p. 328, prior to August 14, 1922. The question is whether since that time they have been diligent. The testimony shows that, when the opinion of this court was announced in 96 Wash. 616, 165 Pac. 495, the appropriators placed equipment on the ground and started to build a dam, and that while the action reported in 96 Wash. 616, 165 Pac. 495, was still pending, the cross-appellants petitioned the state hydraulic engineer to determine the relative rights to the waters, which is the present action, and while this action was pending, cross-appellants commenced an action in the superior court of Grant county to prevent the building of the dam, and this action is still pending.

In view of all this litigation, it cannot be said that Ham, Yearsley & Ryrie have not at all times been diligent in attempting to prosecute to completion the work necessary to make this appropriation good. The question of diligence in the physical construction of the work is to be answered having in view the difficulties that are encountered in the construction, among which are the legal difficulties which are placed in the way

and which must be overcome in order to perfect title to the water which is to be used. Under all the circumstances here shown, we cannot say that there has been any forfeiture of the rights by failure to comply with §§ 3 and 4, Laws of 1891, p. 328.

(6) Cross-appellants except to the award to Ham, Yearsley & Ryrie of rights under class nine, by which they are given the use of the water from Moses lake on lands surrounding it by pumping. It is the claim that Ham, Yearsley & Ryrie have no right to the use of the water for adjoining land; that their appropriation is for the purpose of taking water for land situated at some distance. An examination of the early appropriation notices shows that they were made of waters for the distant land, but the last appropriation, of July 7, 1910, under which this award in class nine is made, for pumping the surrounding lands, shows the appropriation covered that purpose. This appropriation is given its proper place in the schedule, being made inferior to the prior appropriations.

(7) Objection is made to the allowance under class six of the O'Sullivan award for some 800 acres surrounding Moses lake. No argument is made by any of the parties in regard to this allowance and we are unable to find the ground upon which the objection can be based. It is therefore dismissed with as little consideration as the parties themselves have given it.

(8) The state of Washington, as the owner of five sections of state school lands which are riparian to Crab creek (the source of Moses lake), objects to the decree which reverses the hydraulic engineer's award, by which award these lands were given water for irrigation by virtue of their riparian rights, the decree denying the lands any water rights whatever. It is stated that the referee's award was reversed by the trial court on the authority of the decision in *In re*

*Doan Creek,* 125 Wash. 14, 215 Pac. 343, it being the
court's view that that case decided that riparian rights
do not attach to state lands until title to such lands has
passed to private owners. At the time that the referee
made his report, he followed the decision of this court
in *Colburn v. Winchell,* 97 Wash. 27, 165 Pac. 1078.
After the report was filed but before the decree was
signed, this court decided *In re Doan Creek, supra,*
and it was by reason of the later decision that the trial
court altered the referee's report as to this land. The
state, in its brief, raises this question for the purpose
of having it finally determined, and calls our attention
to the fact that the two decisions announce squarely
antagonistic doctrines. The *Attorney General,* with
commendable impartiality, presents arguments in favor
of both doctrines, he himself, however, inclining to the
view that the later doctrine is the more practicable
one in its operation and should probably be adopted
by this court, as it was by the trial court, although on
the face of his appeal the *Attorney General* is appeal-
ing from a decision which he now says represents the
better view.

The *Colburn* case squarely holds that riparian rights
attach to state school lands, and this conclusion is based
upon the provision of the enabling act, § 10, granting
to the state sections 16 and 36 of every township for
the use of public schools, and providing that such lands
shall not be sold for less than ten dollars per acre,
and §§ 1 and 2, art. 16, of the state constitution, which
accepted these conditions. The state, after taking
these lands, holds the absolute fee impressed with a
trust which is not to be violated. The *Colburn* case
holds that the waters of a non-navigable stream upon
school lands cannot be appropriated, since those waters
are considered a part of the soil and are held along
with the soil in trust and can only be disposed of by

sale at public auction. The decision in the *Doan Creek* case does not mention the *Colburn* case and lays down an exactly contrary rule than that followed in the earlier case. The court held in the *Doan* case that riparian rights do not attach to school land until it has been sold to a private owner, applying the same rule as is applied to Federal lands. There is no discussion of the question in the *Doan* case, but the rule can find argument in its favor on the theory that art. 21 of the state constitution, whereby there are dedicated all the waters of the state to the public for the purpose of irrigation, is in conflict with the enabling act and §§ 1 and 2, of art. 16, and that where a conflict exists between the constitution and the enabling act, constitutional provisions prevail. *Romine v. State,* 7 Wash. 215, 34 Pac. 924; 12 C. J. 699. Further, that if there were nothing but the provision of the enabling act and § 21, the dedication of the water of the state for the purposes of irrigation, by the constitution, would supersede the provision of the enabling act, providing that the water on state school lands should not be disposed of except as there provided.

The conflict between article 21 and §§ 1 and 2, art. 16, of the constitution can be disposed of on the principle that, where two or more acts are in *pari materia,* the court will so construe them as to make them both effective. *Davidson v. Carson,* 1 Wash. Terr. 307; *White v. North Yakima,* 87 Wash. 191, 151 Pac. 645. Taking the two sections of the constitution together, then, the provision against the disposal of school lands, which would include the water rights, must be held to be qualified by § 21, which gives the right to acquire water on school lands by appropriation. The state has, by the later constitutional provision, waived the riparian rights to the school land by this dedication. This section of the constitution was not considered in the *Col-*

*burn* case. That case might be reversed on the ground that it was erroneous in holding that the water rights were a part of the land and to now hold that they constitute no estate or interest therein, and rule that certain privileges in connection with such land may be granted without a violation of the trust. The state has granted rights of way for public roads across school lands. Section 8087, Rem. Comp. Stat. [P. C. § 6395]. Condemnation of state school land is permitted, although the constitution and enabling act provide that it shall only be sold at public auction, and it has been held that enabling act provisions and constitutional provisions such as the one here deal with the disposal of the fee and not with the granting or dedicating of lesser interests, and the *Colburn* case could be reversed on the theory that the grant of the right to appropriate water on these school lands did not involve the fee simple title to the land.

We prefer, however, to adopt the view that the *Colburn* case was correct in its statement of the relation of water to the land, and to reverse the decision on the ground already suggested; that art. 21 of the constitution being in conflict with the enabling act and §§ 1 and 2, of art. 16, should be given the interpretation which we have given it. The result is that the state, by art. 21 and water legislation, has granted the rights which the state has in the state school lands for the purpose of irrigation to the public, and that the result is that the state's riparian rights to such lands have been waived, as long as the title remains in the state; that they attach to the lands by the transfer from the state to private ownership, thus following the rule as it relates to Federal lands. This was the rule adopted by this court in *State ex rel. Olding v. Stampfly,* 69 Wash. 368, 125 Pac. 148, where it was held that the doctrine of appropriation was applicable to school

lands as well as other Federal lands during the time that Washington was a territory, the court saying:

"No exception is made in favor of lands reserved for the benefit of the common schools of future states, and it is clear that none was intended; but on the contrary it was intended that rights in waters riparian to such reserved lands could be acquired by appropriation in the same manner and that such rights were acquired in waters riparian to the public lands generally. It follows therefrom that the appellant in the case at bar has no superior right to the water in question, in virtue of the fact that his land was school land held in reserve by the United States for the benefit of the future state of Washington at the time the waters of Nanum Creek were first appropriated for the purposes of irrigation."

Practical considerations, while recognizing the logic of the rule announced in the *Colburn* case, seem, however, to suggest that the rule of the *Doan* case should be the one followed as long as it has sufficient legal support. This is true for the reason that legislation in this and other arid districts and the tendency of the decisions of the courts is in favor of the *Doan* rule. The Federal government, following the behest of the arid regions, adopted this rule as to its lands. The state, by its constitutional provision and by the adoption of the water legislation, has accepted this policy in regard to other waters under its control or ownership; and in conformity with this modern tendency, and in the interest of an harmonious rule applicable to all public waters, it seems the better policy to say that, until school lands pass into private ownership, riparian rights on a stream on such lands do not attach.

(9) Many owners of land around Moses lake have joined in the cross-appeal, claiming that the lower court erred in deciding that Ham, Yearsley & Ryrie had any "inchoate right" or any right whatsoever in

the waters of Moses lake or Crab creek, or any "inchoate right" of any kind whatever to store any water in the lake for any purpose. Their argument, generally, is that Ham, Yearsley & Ryrie have not, during the years since their notice of appropriation, done anything to accomplish the purposes for which the appropriation was made, and that their plans are unfeasible, impracticable and visionary, and that the cross-appellants, having put the waters to a beneficial use, should have a prior right. They claim that they were not involved in the controversy with Ham, Yearsley & Ryrie in the cases heretofore brought to this court, and that on account of the long delay in beginning the actual work, Ham, Yearsley & Ryrie have lost their "inchoate right."

Of the thirty cross-appellants, some thirteen derive their title from parties who were parties to the prior litigation, and as to such, of course, such prior litigation is binding. They acquired the rights which they claim after January, 1909, the time of the filing of the first appropriation notice by Ham, Yearsley & Ryrie, some of them even acquired rights after the decision of this court in 96 Wash. 616, 165 Pac. 495.

Two of the cross-appellants were given rights in class five under an initiation of rights arising in December, 1909, which is subsequent in time to the Ham, Yearsley & Ryrie notice.

Some ten of the cross-appellants are taking water from wells by pumping upon their own lands. The report of the referee relating to irrigation from wells on land in the vicinity of the lake says, "the referee is of the opinion that the right to irrigate by pumping from wells is not involved in this controversy." No testimony was taken by him to determine such rights. The decree, which follows the referee's report, does not specially mention this phase of the case but must

have arrived at the same conclusion, and these cross-appellants not having appealed from that conclusion, we must hold that the irrigation from wells is not involved in this action, and the rights of these pumpers from wells are not determined by this decree.

Two others of the cross-appellants were parties to the original action and are therefore bound by the prior litigation.

The remaining cross-appellants are the Moses Lake Horticultural Company; the Penhallocks and Koch, whose rights we have determined in numbers one and two above. The question of the feasibility of the project is not before us. This court has confirmed the rights of Ham, Yearsley and Ryrie in 70 Wash. 442, 126 Pac. 945, and 96 Wash. 616, 165 Pac. 495, and it is not the province of this court to now review the question of whether the scheme is visionary, impracticable or improperly financed. If Ham, Yearsley & Ryrie proceed now to comply with the statutory requirements to make good their notice of appropriation, they will have done what the law demands. If time and experience demonstrate that the plan cannot be carried to fruition, their rights will, of course, cease, and then the other landowners may take the steps which may then become necessary for them to avail themselves of their rights under the new condition of affairs.

(10) Cross-appellants are dissatisfied with the court's fixing the natural level of the water of Moses lake at 1,038 feet above sea level, claiming it should have been fixed at 1,046 above. The question here raised is similar to that which is discussed in paragraph 3 above, where Ham, Yearsley & Ryrie were claiming the right to lower the lake below 1,038 feet. Assuming that the cross-appellants are correct in their assertion that the right of the general public to have a navigable stream retain its navigability and that

Moses lake is, as we have already determined, a navigable lake, and that Ham, Yearsley & Ryrie have no right to destroy it as a navigable body of water or to materially impair its usefulness as such, still the question of navigability is not before us. This court determined in 70 Wash. 442, 126 Pac. 945, that the lake was navigable, and the evidence showed it then stood at 1,038 feet above sea level. It was in that condition when we passed upon its navigability. If it was navigable then, it must be navigable under the decree. The cross-appellants claim that, prior to 1904, the lake stood at the level of 1,046 feet, but the case of 70 Wash. 442, 126 Pac. 945, was decided in 1912. If all the destruction of navigability which is portrayed by the cross-appellants of this body of water some 18 miles long and one mile wide, with a number of inlets locally called "horns," results by fixing the level at 1,038 feet, the answer is that it resulted five years before the first notice of appropriation by Ham, Yearsley & Ryrie, and no act of the appellants is responsible for this situation. They took the lake as they found it and, under the decree, they will use it in the same condition. There is no evidence that anything they were going to do is going to injure the navigability, and there is no evidence as to what is the lowest point at which it will still be navigable. The one person who knows most about this situation, who is interested in protecting the rights of the public and of all having a special interest in the waters of this lake, after patient investigation of the situation, has said that the level of the lake should remain as it had been some years ago. With such a finding this court is not inclined to, and will not, interfere.

The decree of the trial court is affirmed.

TOLMAN, C. J., HOLCOMB, FULLERTON, and MITCHELL, JJ., concur.