[No. 39892. En Banc. February 26, 1970.]

*In the Matter of the Determination of the Rights to the Use of the Waters of* STRANGER CREEK.

M. G. WALKER, *Respondent,* v. JOHN O. ALBY *et al., Respondents,* THE STATE OF WASHINGTON, *Appellant.**

*Reported in 466 P.2d 508.

*The Attorney General, J. R. Pritchard, Harold T. Hartinger,* and *Theodore O. Torve, Assistants,* for appellant.

*The Attorney General, Charles B. Roe, Jr.* and *Charles A. Kimbrough, Assistants,* for respondent.

NEILL, J.—This is an appeal by the Department of Natural Resources from a decree confirming the report of the referee in a water rights adjudication proceedings. Pursuant to RCW 90.03.110 - .240, a petition was filed for adjudication of the rights to the waters of Stranger Creek, a small, nonnavigable water course in Stevens County. Thirty-one claims to the waters were filed.

The Department of Natural Resources, hereinafter called the department, manages and administers the public trust lands[1] of the state. Included in these trust lands are two 80-acre tracts riparian to Stranger Creek.

Title to one parcel passed from the federal government to the state on April 21, 1960, as part of the 90,000-acre Enabling Act grant dedicated to the support of agricultural colleges. *See* Act of February 22, 1889, 25 Stat., ch. 180, § 16, p. 681. Title to this parcel was transferred to the state subject to existing rights under a federal grazing lease.

The second parcel was acquired by the state upon admission to the Union, November 11, 1889, as part of the Enabling Act grant of two sections per township for the sup-

---

[1] We use this term to designate lands granted by the United States to the state under the Enabling Act dedicated to university, agricultural college, normal schools, scientific schools, capitol, penitentiary, charitable, educational, penal, reformatory, and common school purposes. 25 Stat., ch. 180 §§ 10, 12, 14, 15, 16 and 17, p. 679-681; Enabling Act, RCW vol. 0.

port of common schools. *See* Act of February 22, 1889, 25 Stat., ch. 180, § 10, p. 679. This parcel has been under state grazing leases since 1955.

The most beneficial use of these public lands is for cattle grazing and forestry. Since at least 1887, the waters of the creek have been used by stock drinking directly from the stream. Direct access to the water is essential to the use of these lands for grazing purposes.

The department's statement of claim in the proceedings asserts a right to waters riparian to both parcels for stock-water purposes. The claim is for a maximum of .005 cubic feet of water per second on the two parcels, based on both riparian and appropriative rights. The claims states:

> The state expressly claims a stockwater right in connection with those parcels of state owned land across and over which Stranger Creek or its tributaries flow. The state claims any other riparian and appropriative interest which may properly be claimed as possessed by the United States and conveyed to the state by the clear list described herein [*i.e.,* the 1960 parcel].

The respondent, the Supervisor of Water Resources, filed his referee's report with the superior court in which he recommended disposition of the claim of the department as follows:

> 6. Claimant No. 3, Department of Natural Resources, State of Washington, having jurisdiction over state "school lands" in the Stranger Creek drainage, has appeared as a riparian owner and claimed a riparian right to the use of Stranger Creek for stock watering purposes on said lands. While these school lands are suitable for stock grazing purposes, and have been used for the same in the past, the Referee, understanding the cases of *In re Doan Creek,* 125 Wash. 14 (1923) and *In re Crab Creek and Moses Lake,* 134 Wash. 7 (1925) to hold that riparian rights on a stream on school lands do not attach until such lands pass into private ownership, rejects said claim.

The department excepted to the above portion of the referee's report, but the trial court affirmed and incorporated the entire report in its final decree. The department appeals, urging

that the cases of *In re Doan Creek* 125 Wash. 14 (1923) and *In re Crab Creek and Moses Lake* 134 Wash. 7 (1925), relied upon by the court and the referee as set forth [above], which hold that riparian rights do not attach to granted trust lands under jurisdiction of appellant until such lands pass into private ownership, should be overruled, and that appellant should be granted stock water rights based on his riparian claim; said rights to include an amount of water flowing across lands of appellant as are sufficient to satisfy requirements for stock grazing thereon drinking directly from the stream.

No contention is made to us as to the state's appropriative rights; so we do not consider the matter.

The substance of the department's contention is that the holding in *In re Crab Creek & Moses Lake,* 134 Wash. 7, 235 P. 37 (1925), works to the detriment of the public by obstructing efficient management of the state's school and other trust lands, that the holding is not compelled by Const. art. 21, § 1, and that cases relied upon by the referee and the trial court should be overruled. The department thereby asks us to reexamine the question: Are the state's trust lands entitled to the same riparian water rights that would inure to their benefit if they were in private ownership?

■ At the outset, we are confronted with the supervisor's assertion that the doctrine of stare decisis precludes us from entertaining the department's contention. Counsel for the supervisor calls our attention to the principles on which that doctrine is based. He correctly posits the importance of continuity in the law and the necessity of respect for precedent if we are to remain a society of laws and not of men. He aptly reminds us that these considerations are all the more weighty when change is likely to disrupt a status quo which was established in reliance upon prior pronouncements. While these propositions are eminently correct, the question remains whether they are dispositive here. The department observes that there has been no showing that an established status quo will, in fact, be disrupted by an alteration of precedent.

Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious action or the whims of current holders of judicial office. But we also recognize that stability should not to be confused with perpetuity. If the law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. The true doctrine of stare decisis is compatible with this function of the courts. The doctrine requires a clear showing that an established rule is incorrect and harmful before it is abandoned. Thus understood, the doctrine of stare decisis does not preclude consideration of the department's arguments.

Before turning to the holding of *Crab Creek, supra,* a short resume of the history of our treatment of riparian water rights in state trust lands will serve to place the current issue in perspective. In *State ex rel. Olding v. Stampfly,* 69 Wash. 368, 125 P. 148 (1912), we held that waters from a stream could be appropriated prior to statehood by private, nonriparian owners as against any riparian rights of the state in its school lands. We there traced the history of congressional treatment of lands held in the public domain, observing that Congress had permitted appropriation of waters on the public domain to the extent that local law and custom permitted. It followed that, when specific lands were conveyed by the federal government to the state in 1889 as part of the trust lands under the Enabling Act, the state acquired such lands subject to then existing rights of appropriators. *Olding* was followed by *Colburn v. Winchell,* 97 Wash. 27, 165 P. 1078 (1917), wherein we held that waters of a nonnavigable stream on state school lands are not subject to appropriation since those waters are part of the soil and held in trust. This ruling was based on § 10 of the Enabling Act and §§ 1 and 2, art. 16, of the constitution. Thus, under *Olding* and *Colburn,* it was our position that waters of nonnavigable streams on state trust lands were subject to vested rights of

appropriators as of the date of statehood, but that the riparian rights of the state barred any subsequent appropriations.

Then, 6 years later, in *In re Doan Creek*, 125 Wash. 14, 215 P. 343 (1923), we held that private riparian water rights do not attach to school (trust) lands until the lands are sold to private owners. *Colburn, supra,* was neither considered nor cited.

Two years later in *In re Crab Creek & Moses Lake, supra,* we treated the *Doan Creek* case as holding that no riparian rights attach to state lands until they pass into private ownership without reference to the holding in *Colburn, supra.* Recognizing the dichotomy between the two positions, we chose to follow the *Doan Creek* position on the basis that Const. art. 21, § 1 constituted a waiver of riparian rights in state trust lands. Accordingly, since 1925, it has been the rule that state trust lands do not have riparian water rights, that such rights attach only upon transfer of the land into private ownership, and that appropriative water rights vesting prior to transfer of the land by the state are superior to the riparian rights which then attach.

It is apparent to us that the court in *Crab Creek* was not speaking from constitutional compulsion, but rather was employing a constitutional interpretation as a means of protecting the principle of beneficial use from the obstacle posed by the traditional common law concept of riparian rights. Const. art. 21, § 1 does not, by its terms, waive riparian water rights in state trust lands. Nor is it essential to so read it in order to avoid conflict with provisions of the Enabling Act or of other provisions of the constitution. The *Crab Creek* court was candid to observe that its waiver holding was chosen as a matter of what then appeared to be the best policy, and that alternative constitutional interpretations are available. At 134 Wash. 25, we find the following:

> That case [*Colburn*] might be reversed on the ground that it was erroneous in holding that the water rights were a part of the land and to now hold that they consti-

tute no estate or interest therein, and rule that certain privileges in connection with such land may be granted without a violation of the trust. . . .

We prefer, however, to adopt the view that the *Colburn* case was correct in its statement of the relation of water to the land, and to reverse the decision on the ground already suggested; that art. 21 of the constitution being in conflict with the enabling act and §§ 1 and 2, of art. 16, should be given the interpretation which we have given it. [*i.e.,* that article 21 amounts to a waiver of riparian rights on state-held school lands.]

To understand the policy basis of *Crab Creek,* it is essential to understand that the meaning of the term "riparian water rights" has undergone changes in meaning. At traditional common law, the riparian water right was a strict natural flow theory and was regarded as an absolute incident of property ownership. Thus, a riparian owner could fail or refuse to put his water to beneficial use and at the same time prevent others from using it by assertion of his "riparian water rights." Historically, then, the relationship between "riparian" and "appropriative" water rights could be characterized as one between strict proprietary rights and rights related to usage.

■   In Washington, the concept of riparian rights in water has reflected both characteristics. In our first case on the subject, *Geddis v. Parrish,* 1 Wash. 587, 21 P. 314 (1889), we said that this state adopted the "reasonable use" theory of riparian rights rather than the strict common law "natural flow" theory. But in other early cases we said that riparian rights are property rights (*Nesalhous v. Walker,* 45 Wash. 621, 88 P. 1032 (1907)), and that these rights are inseparably annexed to the soil and are part of the fee title (*Rigney v. Tacoma Light & Water Co.,* 9 Wash. 576, 38 P. 147 (1894); *Hayward v. Mason,* 54 Wash. 653, 104 P. 141 (1909)). Thus, from the beginning, the term "riparian water rights" has lent itself to two understandings in Washington: first, as being in the nature of a proprietary interest, with the attendant connotation that the owner could obstruct beneficial use by others though making no use of the water himself; second, the term may be understood as connoting a

right to a prior claim for purposes of beneficial use. *Cf.,* *Brown v. Chase,* 125 Wash. 542, 217 P. 23 (1923), and *Hunter Land Co. v. Laugenour,* 140 Wash. 558, 250 P. 41 (1926), with language in *Wallace v. Weitman,* 52 Wn.2d 585, 588, 328 P.2d 157 (1958).

The *Olding* and *Colburn* cases, *supra,* spoke of riparian rights in words that implied the traditional common law meaning of that term. *Crab Creek* was a response to this language, and is best understood as a reaffirmation of this court's preference for a rule of water rights that advances rather than obstructs the principle of beneficial use. That this was the court's purpose in *Crab Creek* is evidenced by reference there to the policy of the federal and state governments in arid regions which favors the fullest usage of water resources and by the court's preference there for the alternative interpretation of article 21 which would preclude any "riparian rights," in the earlier common law sense of that term. 134 Wash. 26.

Along with judicial evolvement, there has developed an important body of legislation relating to our water resources. Our 1917 water code (RCW 90.03) applies to all surface waters, and our ground water code of 1945 (RCW 90.44) applies to all definable underground waters. These statutes and amendments to them attest to the legislature's apparent intention (1) that the state's water resources be put to their most beneficial use, and (2) that a record be made of these usages so as to assure continuing beneficial use and protect against both foreign and domestic intrusion on Washington water rights. RCW 90.14. In at least the first of these areas, the legislative preference for protection of beneficial use has paralleled developments in our case law.

For our present purposes, the point is that judicial and legislative developments have firmly established the preference for beneficial usage in concepts of both riparian and appropriative rights to water. In the light of this, it is seen that the specific holding in *Crab Creek, supra,* is no longer necessary as a bulwark against the possibility that benefi-

cial usages can be arbitrarily prevented by a holder of riparian rights.

■ Much of the state's trust lands lie in relatively arid regions where the most beneficial use of the water has been determined to be for grazing[2] and forestry. By leasing for such usage, the state has and would continue to obtain funds for educational and other trust purposes. The Crab Creek rule, as applied here, would destroy that benefit. The importance of this issue is not to be minimized. Time and space limitations deter us from relating the history of the treatment of public land grants to the states and the policy supporting the land grants to newly created states. Suffice it to say that due to an enlightened understanding by state officials of the importance to this state of these land grants, Washington has benefited greatly, and its public institutions have been protected, by a policy of retention and development of these lands. This is to be contrasted with the policy of many of our sister states which have disposed of most of this valuable, permanent public resource and source of revenue.

We hold that the state may establish riparian water rights in its trust lands, to the same extent that such rights could be established by a private owner. *See Brown v. Chase, supra.* To the extent that the *Doan Creek* and *Crab Creek* cases are inconsistent with this holding, they are overruled.

Matters relating to other requirements for the perfection of riparian water rights or to priority dates as to the state's lands were not determined by the trial court. Any discussion of them at this time would be premature. However, the trial court, upon remand, should entertain arguments on these issues in determining the rights asserted by the department.

[2]The referee's report states: "[I]t is clear from the testimony of early residents of the area that utilization of the watershed for grazing of cattle and of the stream system for stock watering purposes dated to as early as 1887. The Referee finds that in those instances where the stock drink directly from the stream, rights of a highest priority have been established for this purpose under the laws and customs recognized in the locality at the time."

658

Reversed and remanded for further proceedings in accordance herewith.

HUNTER, C. J., FINLEY, WEAVER, ROSELLINI, HAMILTON, HALE, and McGOVERN, JJ., concur.

May 8, 1970. Petition for rehearing denied.